THE OIL CITY FUEL SUPPLY CO. v. WILLIAM BOUNDY.

ERROR TO THE COURT OF COMMON PLEAS OF CLARION COUNTY.

Argued October 3, 1888—Decided October 22, 1888.

1. To render declarations of an agent admissible in evidence against his principal, it must appear; either, (*a*) that the agent was specially authorized to make them; or, (*b*) that his powers were such as to make him the general representative of his principal, having management of the entire business; or, (*c*) that the admissions were part of the consideration of a contract; or, (*d*) if they were non-contractual, that they were part of the res gestæ.

2. In an action against a natural gas company to recover for injuries suffered from an explosion charged to have been caused by the negligence of the defendant, the declarations of a manager of the line, relating to the alleged negligent act, but not coming within either of the provisions of the above rule, are inadmissible against the defendant.

3. As any degree of negligence on the part of the plaintiff, contributing to the injury, will destroy his right to recover in such an action, it is.

error to charge the jury that "if the plaintiff's negligence contributed essentially—or materially—to the injury, it is obvious that it did not occur by reason of the defendant's negligence."

4. It is not error, in such an action to charge, that the plaintiff, in using gas from the defendant's high-pressure line, assumed only the usual and ordinary risks of such use, and not those risks which became extraordinary through the negligence of the defendant.

Before GORDON, C. J., PAXSON, STERRETT, CLARK, WILLIAMS and HAND, JJ.; GREEN, J., absent.

No. 28 October Term 1888, Sup. Ct.; court below No. 123 August Term 1887, C. P.

On May 19, 1887, an action in case was brought by William Boundy against the Oil City Fuel Supply Company, a corporation engaged in the transportation and supply of natural gas, to recover damages for injuries suffered by reason of negligence charged against the defendant. The plea was, not guilty.

At the trial on November 18, 1887, it appeared that in 1886, the defendant company, having its principal place of business in Oil City, was supplying natural gas from its wells in Venango county, the Nufer Nos. 1 and 2, and the Hale, by means of a Clarion county line, to producers in the Cogley Oil field, in Clarion county, and to consumers in Fern City and Edenburg, near that field. The Clarion county line was managed by H. P. Loomis, as the superintendent for the company in that county. To supply consumers in the towns the gas was run into a gasometer and thence served by a low-pressure line. To supply the boilers connected with the drilling and pumping of wells in the oil field, a high-pressure line was used, such operators as desired them furnishing their own regulators to control the pressure.

The plaintiff was operating three oil wells near Fern city, owned by him, all pumped with steam from one boiler-house. One of the wells was within ten feet of the boiler-house; the others some distance away. Gas was taken from a two-inch high-pressure line of the defendant and conducted to the boiler arches by a one-inch service pipe, upon which there was a pressure regulator in good working condition.

In the afternoon and evening of November 5, 1886, the

weather was very cold, and the gas pressure very low. The plaintiff, who pumped his wells at night, he and his son occupying as a sleeping place a small room built to the boiler-house, left the gas burning and the engines running when they went to bed about half past ten, or eleven, o'clock. He got up at two o'clock, and everything running all right he went to bed again. At half-past four he was up again, and, looking at the pressure-gauge connected with the boiler, he found the proper head of steam, about 55 pounds. There was a gas jet burning in the boiler-house. In a very few minutes after, as he was turned away, an explosion occurred, indicating that the boiler-house had suddenly filled with gas which had reached the burning jet. He and his son escaped with difficulty, but their clothes and other property, the boiler-house and the rig and appliances connected with the near well were consumed.

A number of witnesses testified that about the time the plaintiff was burned out there was a "big rush" of the gas; "more pressure that night than any time before or after." One of them said: "I could not use my regulator at all; could not control it."

To establish the cause of the sudden and excessive flow of the gas, the plaintiff introduced evidence tending to show that gas had been admitted into the line from a new well, near the others, about the date of the explosion; also, that in the evening of November 5th, it had been discovered that a gate valve, where the Nufer No. 1 connected with the main line, was frozen, and that about 9:30 P. M. an employee of the company had built a fire about it, to thaw it out, and then left it. From the evidence, together, it was claimed by the plaintiff that either the gas from the Nufer No. 1 had been shut in prior to that night and then admitted suddenly into the line, or that gas from one or more additional wells had been suddenly admitted a short distance west of the Hale well, without any notice to consumers.

William Boundy, the plaintiff, called:

The plaintiff's counsel proposed to prove by the witness that Mr. H. P. Loomis, the general manager of the defendant company in Clarion county, told the witness in the forenoon of November 6th, after the accident, that they had turned in only the Nufer well that night, as causing the pressure on the line;

the witness having first explained to Loomis that he had been burned out by an over-pressure on the line.

The offer was objected to for the reason that it was incompetent to give in evidence the declarations of an agent at that length of time after the occurrence, particularly when it did not appear in the offer that the agent whose declarations it was proposed to prove was present at the occurrence.

By the court: The objection is overruled and testimony admitted.[1]

The testimony of the witness in support of the offer appears in the Opinion of the Court.

Testimony was adduced by the defendant as to the variability of the pressure of gas in the line, from differences in the quantities consumed at different periods of the day, and from the effects of changes of temperature, and as to the greater danger, as was alleged, to consumers from high-pressure lines; from which and from other testimony it was claimed that in going to sleep at night while his fires were burning the plaintiff was chargeable with negligence contributing to his injuries.

The court, WILSON, P. J., after reviewing the testimony, proceeded to instruct the jury:

One of the important questions involved is that of contributory negligence on which the defendant relies to defeat a recovery. Contributory negligence in its legal signification is defined to be such an act or omission on the part of a plaintiff, amounting to a want of ordinary care, as, concurring or co-operating with the negligent act of the defendant, is a proximate cause or occasion of the injury complained of. To constitute contributory negligence there must be a want of ordinary care on the part of the plaintiff and a proximate connection between that and the injury. Besides these two, there are no other necessary elements.

They are the two points of difficulty in the consideration of the question. Did the plaintiff exercise ordinary care under the circumstances? Was there a proximate connection between his act or omission and the hurt complained of? These are the vital questions when contributory negligence is the issue.

The decided weight of the decisions is authority in favor of

the rule that the burden is upon the plaintiff in such a case as this to show his own freedom from contributory negligence; that, as part of his case, to be affirmatively established, he must make it appear that he himself was not in fault; that until he has shown the absence of contributory negligence, and the presence of ordinary care in himself, his case is not duly presented.*   Again, in many courts it is the rule that contributory negligence is matter of defence, and that the burden of establishing it is upon the defendant.   Where this is the rule, the plaintiff has made out his case when he has shown injury to himself and negligence on the part of the defendant which was a proximate cause of it.   It then devolves upon the defendant to allege and prove contributory negligence as a matter of defence, the presumption being in favor of the plaintiff, that he was at the time of the accident in the exercise of due care, and that the injury was caused wholly by the defendant's negligent misconduct.   This is the doctrine in Pennsylvania as decided by the Supreme Court in many cases, but in the later cases, the court inclines to the other rule, putting the burden of proof upon the plaintiff.   But in all courts where contributory negligence is held a matter of defence, whenever the plaintiff's own case raises a presumption of contributory negligence, the burden of proof is immediately upon him.   In such a case it devolves upon the plaintiff as of course to clear himself of the suspicion of negligence that he himself has created.   He must make out his case in full; and, where the circumstances attending the injury were such as to raise a presumption against him, in respect of the exercise of due care, the law requires him to establish his freedom from contributory fault.

It is necessary for the plaintiff to prove: First, negligence on the part of the defendant in respect to the injury alleged in the declaration; and, second, that the injury to the plaintiff occurred in consequence of that negligence.   But in order to prove this latter part, the plaintiff must show that such injury was not caused in whole or in part by his own negligence; for, although the defendant was guilty of negligence, [if the

* See C. & P. R. Co. v. Rowan, 66 Pa. 393; Penn. R. Co. v. Weber, 72 Pa. 27; s. c., 76 Pa. 168; Hays v. Gallagher, 72 Pa. 140; Beatty v. Gilmore, 16 Pa. 463; Waters v. Wing, 59 Pa. 211; Penn. Canal Co. v. Bentley, 66 Pa. 32.

plaintiff's negligence contributed essentially to the injury, it is obvious that it did not occur by reason of the defendant's negligence. Therefore the plaintiff would not prove enough to entitle him to recover, by merely showing negligence on the part of the defendant; but he must go further and also prove the injury to have been caused by such negligence, by showing a want of concurring negligence on his own part, contributing materially to the injury. Hence, to say that the plaintiff must show the latter, is only saying that he must show that the injury was owing to the negligence of the defendant.][2] And as the defendant has the right to have the jury informed as to what facts the plaintiff must prove, in order to recover, it has a right to require the court to instruct them that it was incumbent on the plaintiff to prove a want of such concurring negligence on his part.

\* \* \* \* \* \* \* \*

The jury are instructed that in determining the question of negligence in this case, they should take into consideration the situation and conduct of both parties at the time of the alleged injury as disclosed by the evidence, and if they believe from the evidence that the injury complained of was caused by the negligence of the defendant or its servants, as charged in the declaration, and without any greater want of care and skill on the part of the plaintiff than was reasonably to be expected from a person of ordinary care, prudence and skill, in the situation in which he found himself placed, then the plaintiff is entitled to recover. The court instructs the jury that the rule of law is that every person must be held liable for all those consequences which flow naturally and directly from his act, or which might have been foreseen and reasonably expected as the result of his conduct, but not for those consequences which do not flow naturally and directly from his acts, or which he could not have foreseen or reasonably have anticipated as the result of his conduct.

If the jury believe from the evidence that the defendant or its servants was guilty of the negligence or carelessness charged in the declaration, and that the injury complained of was the natural consequence of such negligence or carelessness, and such as might have been foreseen and reasonably anticipated as the result of such negligence or carelessness, then such

negligence or carelessness should be regarded as the proximate cause of the injury. Although the jury may believe from the evidence that the injury complained of was occasioned by the acts of the defendant, still, if they further believe from the evidence that such injury was not the natural result of the acts of the defendant and could not have been foreseen or reasonably expected to result from its conduct, then the defendant would not be liable. In determining whether an act is the proximate cause of the injury, the legal test is: Was the injury of such a character as might reasonably have been foreseen or expected as the natural result of the act complained of? A party is not in law chargeable with results which do not naturally and reasonably follow as the consequence of his conduct.

An act is the proximate cause of an event only when in the natural course of things and under the particular circumstances surrounding it, such an act would naturally produce the event; and, in order to create a legal liability for damages the injury must be such as a man of ordinary experience and sagacity could foresee might probably ensue from the act. Ordinary care depends upon the circumstances of each particular case, and is such care as a person of ordinary prudence and skill would usually exercise under similar circumstances. Slight negligence means the absence of that degree of care and vigilance which persons of extraordinary prudence and foresight are accustomed to use under similar circumstances. By gross negligence as used in these instructions is meant a wrongful act or omission wilfully and maliciously done or omitted, or wanton, reckless conduct, showing an utter disregard of the rights of others.

\*      \*      \*      \*      \*      \*      \*      \*

The plaintiff's counsel request the court to charge the jury as follows:

1. That the plaintiff in using gas from the defendant's high-pressure line, only assumed the usual and ordinary risks of such use, and not those risks or dangers which became extraordinary through the negligence of the defendant.

Answer: Affirmed.[3]

2. In the absence of contributory negligence on the part of the plaintiff, if the defendant, by an unusual increase of pres-

sure on its gas line, subjected the plaintiff to extraordinary risk or danger, and injury to the plaintiff followed by reason thereof, the defendant would be answerable in damages to the plaintiff for the injury sustained.

Answer: Affirmed.

3. The plaintiff was not bound to anticipate nor to provide against extraordinary risks resulting from the improper and wrongful management of the defendant's business; and if the jury believe from the evidence that the plaintiff's injury, without any fault on his part, was caused by the defendant, as stated, their verdict should be for the plaintiff for such damages as will compensate him for the injury sustained.

Answer: Affirmed.

The defendant's counsel request the court to charge the jury as follows:

1. That the burden of proof in this case is on the plaintiff, and unless the jury believe from the evidence that the fire which injured the plaintiff's property, was actually caused by the negligence or other fault of the defendant company, the verdict must be for the defendant.

Answer: Affirmed.

2. The defendant company had a right to lay and operate a high-pressure gas line from its wells, to supply the Cogley oil field and surrounding country, without being bound to put on its line any apparatus to reduce or control the pressure, and if the jury find from the evidence that such apparatus would have so obstructed the flow of gas as to prevent its reaching and supplying the consumers for whom it was intended, particularly as no oil well owner or other consumer was under any compulsion to use gas from said line, but such use was a matter of their own free choice.

Answer: Affirmed.

3. When the plaintiff kept his well connected with the defendant's high-pressure gas line for the purpose of supplying his boiler with fuel, if he knew there was danger in the use of said gas, or might have known it by the exercise of ordinary intelligence and observation, he assumed upon himself the risk of all such dangers, however occurring, from which he might have protected himself by ordinary vigilance or care.

Answer: Affirmed.

Arguments.

4. Even if there was fault or negligence on the part of the defendant, resulting in the injury complained of, still, if the jury shall find from the evidence that the plaintiff was also guilty of negligence, which contributed in any degree to the injury, the verdict must be for the defendant.

Answer: Affirmed.

5. Even if the defendant should be liable for the injury caused by the fire at the plaintiff's boiler house, if the injury to the production of plaintiff's well was largely increased by his neglect or inability to repair the well-rig and fixtures in a reasonable time, the defendant cannot be held liable in this action for any such increased loss,—there being no evidence of any wanton injury inflicted by the defendant.

Answer: Affirmed.

The jury returned a verdict in favor of the plaintiff for $1,120. Judgment having been entered, the defendant took this writ and assigned as error:

1. The admission of plaintiff's offer.[1]
2. The part of the charge embraced in [ ][2]
3. The answer to the plaintiff's 1st point.[3]

*Mr. B. J. Reid*, for the plaintiff in error:

1. The declarations of the officers of a corporation rest upon the same principle which applies to the declarations of other agents. If made after the transaction is fully completed and ended, they are incompetent. Their mere narrative of a past occurrence cannot be received as proof against the principal, of the existence of such occurrence: Huntingdon etc. R. & C. Co. v. Decker, 82 Pa. 119; Hannay v. Stewart, 6 W. 489; Hough v. Doyle, 4 R. 294; Fawcett v. Bigley, 59 Pa. 411; Bigley v. Williams, 80 Pa. 107; Shaffer v. Haish, 110 Pa. 575. Without these declarations the plaintiff had no evidence, in chief, whatever, of any act done by the defendant or its agents. Can it be said that the admission of the offer was a harmless error?

2. In Monongahela City v. Fischer, 111 Pa. 9, the court below was reversed for instructing the jury that the plaintiff could recover unless his negligence contributed "in a material degree" to the accident, the very language we complain of

here. PAXSON, J., said: "The doctrine of this court has always been that if the negligence of the party contributed in any degree to the injury, he cannot recover. This is a safe rule, easily understood, and cannot well be frittered away by the jury. But if we substitute the word, material, for the word, any, we practically abolish the rule, for a jury can always find a way to avoid it." True, at another place in answer to our fourth point, the court affirmed the correct rule on this subject. But the minds of the jury were then preoccupied by the erroneous qualification, twice stated, of "essentially and materially."

3. The plaintiff's first point is so worded as to assume that the risks or dangers in this case " became extraordinary through the negligence of the defendant." There is no "if," "may," or anything hypothetical about the language. Moreover, it is not true that one who uses gas from a high-pressure line, circumstanced as this line notoriously was, assumes only the usual and ordinary risks of such use. He assumes those also which may become extraordinary through the negligence of the defendant, but from which he may protect himself by ordinary vigilance and care: Pittsb. & C. R. Co. v. Sentmeyer, 92 Pa. 276.

*Mr. John W. Reed* (with him *Mr. Harry R. Wilson*), for the defendant in error:

1. The testimony covered by the first assignment of error was competent and admissible on three distinct grounds:

(*a*) As a part of the res gestæ; which has been defined as those circumstances which are the undesigned incidents of the particular litigated act, and which stand in immediate causal relation to the act: Whart. Ev. § 259. Immediateness is tested by closeness, not of time, but of causal relation to the act: Whart. Ev. § 262; Rinesmith v. Railway Co., 90 Pa. 262.

(*b*) There was evidence tending to show that Mr. Loomis, who had charge of the company's business, had connected another gas well with the main line; also, that he was in Fern city giving directions and instructions about the gas supply, the afternoon before the explosion, and this evidence made his declarations with reference to what had been done admissible: Dodge v. Bache, 57 Pa. 424.

(*c*) It is elementary law that if one commit the management of his whole business, or of a particular line of his business, to an agent, he is bound by the admissions of the agent as to the entire business committed to him; and if a general agent, such admissions need not be part of the res gestæ. Eminently is this the case with corporations: Whart. on Ev. § 1177; Morse v. Railroad Co., 6 Gray 450; McGinness v. Adriatic Mills, 116 Mass. 177. Declarations of an agent, acting as such, within a reasonable period of time after the transaction, are competent against his principal: Stockton v. Demuth, 7 W. 39; Union R. & T. Co. v. Riegel, 73 Pa. 72. Moreover, the error, if any, was harmless, and this court will not reverse therefor: Ziegler v. Handrick, 106 Pa. 94; Trego v. Pierce, 119 Pa. 148.

2. Contributory negligence is a defence which confesses and avoids the plaintiff's case; and, to be made available it must appear not only that the plaintiff was guilty of negligence, but that such negligence co-operated with the negligence of the defendant to produce the injury. There was no evidence in the case to justify the submission of that issue to the jury. There was nothing to put the plaintiff on notice of danger threatened, and he could not be convicted of negligence in doing or omitting to do that which in the exercise of ordinary care and caution was right and proper: Beach on Cont. Neg., 61, § 19; Gray v. Scott, 66 Pa. 345; Thirteenth etc. Ry. Co. v. Boudrou, 92 Pa. 475.

3. But if contributory negligence had been an issue in the case, the charge was adequate and the jury could not be misled by that portion of it assigned for error. As a whole the charge, on that subject, was more favorable to the defendant than it had a right to ask; and if from the whole charge it appear that the court instructed rightly in point of law, the judgment will not be reversed: Kerr v. Sharp, 14 S. & R. 399; Carothers v. Dunning, 3 S. & R. 373; Penn. R. Co. v. Coon, 111 Pa. 439; Lehigh V. R. Co. v. Brandtmaier, 113 Pa. 616; Smith v. Meldren, 107 Pa. 352; Galbraith v. Black, 4 S. & R. 207. In the affirmance of plaintiff's fourth point, the court charged, distinctly, that if they should find from the evidence that the plaintiff was guilty of any negligence which contributed in any degree to the injury, he could not recover.

4. The last assignment of error is without merit. Plaintiff was not bound to anticipate negligence on the part of the gas company, nor, knowing of such negligence was he bound to anticipate all the perils to which he might possibly be exposed by such negligence : Oil City Gas Co. v. Robinson, 99 Pa. 1; Phil. & R. R. Co. v. Schultz, 93 Pa. 341.

OPINION, MR. JUSTICE HAND :

This was an action for negligence alleged to have been the cause of the destruction of the plaintiff's boiler-house. The allegations were twofold: first, that defendant had turned on the flow of additional wells of gas into the main pipe so as to increase the pressure to an extraordinary degree, thereby causing an explosion and the conflagration of the boiler-house ; and second, that a stoppage in the pipe by freezing or other obstruction had set back the gas so that by its confinement and accumulation when let loose by thawing, it increased the pressure in the same degree, and notice should have been given. The defendant denied the first allegation, and claimed that as to the second, it was not necessary to give the notice ; that on a high-pressure line with proper safety valves on the part of the plaintiff, all such irregularities are controlled with perfect safety; also, that by sleeping at his post the plaintiff was guilty of contributory negligence.

The assignments of error are three, and we consider them in their order.

The court below permitted the plaintiff to testify that at ten or eleven o'clock on the morning of the day on which the accident occurred, the explosion having taken place at four o'clock in the morning, he met the agent of the defendant company at Fern City, away from the scene of the accident, and said to him, " You must have turned on new wells," and the agent said, " They only opened the Nufer well—turned the Nufer well on." It was objected that this was the declaration of an agent, not part of the res gestæ.

In order to warrant the proof of admissions by an agent, one or more of the following facts must exist: It must appear that the agent was specially authorized to make them ; or his powers must have been such as to constitute him the general representative of the principal, having the management of the

entire business; or the admissions must have formed part of the consideration of a contract; or, if they are non-contractual they must have been part of the res gestæ. In the present case the evidence shows that Loomis was agent only for the line in Clarion county; that the general office of the company was in Venango. It was an attempt to show a negligent act in the nature of a tort. The accident occurred early in the morning; the agent was not there; had not been there, knew nothing of it, and was accosted in Fern City by the plaintiff at ten or eleven o'clock in the forenoon when the alleged statement was made.

It will be readily seen that the declarations are not brought within the rule. It is imperative in cases of alleged tortious conduct, such as negligence, unless the act is specially authorized, that the admissions of the agent must be part of the res gestæ, otherwise they are hearsay. The agent himself can be called to prove the same state of facts attempted to be proved by his admissions. It will be seen that this statement of the agent was not specially authorized; he was not instructed to go and do the negligent act, nor did it appear affirmatively that he had charge of the whole business. It is true he had charge of the Clarion county line, but all the wells were in Venango county; the principal office of the company was there; the agent had an office in Clarion. While he undoubtedly had control to regulate the flow established for the Clarion line, shut on and off the different wells for that purpose, it does not appear that for a new well he had any authority to connect and open it until he received instructions from headquarters. The presumption would be the other way, he being a subordinate superintendent. His statement is no part of the res gestæ. It was made five or six hours after the occurrence complained of; he had not been there, knew nothing of it. If we give the whole of the conversation, it will be seen that it is really an attempt to impinge upon a declaration of the agent a theory of the plaintiff himself, expressed in a state of irritability and excitement, which is not borne out by a single item of testimony. The conversation is as follows:

Q. Mr. Boundy, what position does Mr. Loomis hold in this gas company? A. I always considered him general agent and superintendent of the whole line.

Q. Where has he his office? A. Edenburg, this county.

Q. Where is the general office in this county? A. Oil City.

Q. No; In this county? A. Well, it must be Edenburg.

Q. And who has charge of that general office? A. Loomis.

Q. State what conversation you had with Mr. Loomis on the morning of the accident? A. I seen him about ten or eleven o'clock.

Q. Where? A. In Fern City. And I says to him, " You done a pretty fine thing for me, you burned me out." He said, " We had no men on the line," and I said, " You had. You had men out all night, and pretty near all day, doing something," and I said, " You must have turned on new wells." And he said they only opened the Nufer well—turned the Nufer well on.

There is another reason why this declaration was not evidence. It was not in itself competent to prove what was claimed for it. It was offered for the purpose of showing that the accident was caused by additional wells being turned into the pipe; in other words, that the regular and continued flow of the pipe from which the plaintiff drew his gas was made up of one or more other wells, exclusive of the Nufer well. This, therefore, was a fact to be proved by the plaintiff in order to make the admission bear the construction attempted to be put upon it;—a fact, if true, easily proved. He did not show this. He did not include it in his offer. There is not a particle of evidence that the Nufer well had not always been one of those furnishing gas, previous and up to the time of the accident. On the contrary, the uncontradicted testimony is that it was one of those wells. It is true that the plaintiff said he had worked previously on connections which were intended at some time to furnish gas for the line, but that it had been connected was mere guess work. There was no evidence of that kind; the testimony was to the contrary. It is clear that this admission as proved may have had some effect upon the jury on that part of the plaintiff's allegations.

The second specification of error contains the more serious mistake. It was assumed by the learned judge, in his charge to the jury, that the question of contributory negligence was an element in the case, whether that question was the suffi-

ciency of the regulator of the plaintiff, or the fact of his sleeping at his post on a high-pressure line. The assignment of error is to the general charge, and is as follows : The court charged that " If the plaintiff's negligence contributed *essentially* to the injury, it is obvious that it did not occur by reason of the defendant's negligence. Therefore, the plaintiff would not prove enough to entitle him to recover by merely showing negligence on the part of the defendant, but he must go further and also prove the injury to have been caused by such negligence, by showing a want of concurrent negligence on his own part, contributing *materially* to the injury. Hence, to say that the plaintiff must show the latter is only saying that he must show that the injury was owing to the negligence of the defendant."

In this language the court below fell into the same error committed in Monongahela City v. Fischer, 111 Pa. 9. The rule is that any degree of negligence on the part of the plaintiff, contributing to the injury, destroys his right to recover. The point not only required that the negligence should contribute materially, but essentially to the injury. The reason for the rule is fully stated in the case cited. It is safe and easy of application by the jury. It is the kind of action, not the quantity, on the part of the plaintiff, which prevents the law from measuring between plaintiff and defendant their respective degrees of negligence when the former comes into a court of justice.

In regard to the third specification of error, it may be remarked that as it is worded we discover no error. " The usual and ordinary risks " of a high-pressure line, would differ from those of a low-pressure line, and extraordinary risks in such a case would depend on testimony which carried the risks beyond this rule ; and if they became such through the negligence of the defendant, it would not be error to affirm the point. The propriety of the language would depend on the facts of the particular case.

Judgment reversed and a venire de novo awarded.