THE MAURICE.

(Circuit Court of Appeals, Third Circuit. February 7, 1905.)

No. 39.

1. TOWAGE—INJURY TO TOW—EXCESSIVE LENGTH OF LINE.
   The sinking of a barge in tow in the Schuylkill by striking against the cribbing of a bridge while passing through the draw held due solely to the fault of the tug for towing with too long hawsers.

2. EVIDENCE—ADMISSIONS—RES GESTÆ.
   Statements made by the master of a barge which was sunk by collision with a bridge, made at a subsequent time and different place, as to the cause of the accident, are not admissible in a suit to recover for the loss, either as admissions binding the owner or as res gestæ.

3. TOWAGE—NEGLIGENCE OF TUG—LIABILITY FOR LOSS OF TOW.
   Where the striking of a barge in tow against the cribbing of a city bridge was due to the fault of the tug, she cannot shift the liability upon the city on the ground that if the cribbing had been in perfect condition the collision would not have injured the barge.

   [Ed. Note.—For cases in point, see vol. 45, Cent. Dig. Towage, §§ 11, 19.]

Appeal from the District Court of the United States for the Eastern District of Pennsylvania.

John F. Lewis, for appellant.
Willard M. Harris and Harry T. Kingston, for appellees.

Before ACHESON, DALLAS, and GRAY, Circuit Judges.

DALLAS, Circuit Judge. This is an appeal from a decree in admiralty dismissing the libel of the owner of the barge Peter A. Rogers against the tug Maurice for negligent towage. The city of

Philadelphia was made a party to the cause, under rule 59 of the Supreme Court, but the court below was clearly right in deciding that there was no ground upon which it could be held liable.

The Rogers, while being towed by the Maurice on the Schuylkill river, struck a part or appendage of the Gray's Ferry Bridge, and was so injured that she sank. The learned judge of the District Court held that the Rogers was alone to blame for the accident, and that the fault with which she was chargeable was her master's failure to give proper attention to the wheel during the quarter of a mile that intervenes between the draw of the Baltimore & Ohio Railroad Bridge and the draw of the Gray's Ferry Bridge. We are unable to concur in this conclusion. The hawsers which were used by the tug were much longer than they should have been, and to that fact solely, we think, the occurrence of the collision must be attributed. They should have been shortened at or about the time when, passing from the Delaware river, the Schuylkill was entered. The omission to do this was not only the initial fault, but was the direct and proximate cause of the catastrophe. There was no failure to steer the barge upon approaching the Gray's Ferry Bridge. Her captain testified that when about seven or eight hundred feet from that bridge he went to his wheel and stood by it, and that his boat followed the tug, and did not seem to be in any danger until it was within about 200 feet of the bridge, when he perceived that it was likely to strike the obstruction, and that he never left the wheel until it did, so. Of this testimony of the master of the Rogers, that of his brother, who was with him, and of the master of the other barge, which was being towed alongside the Rogers, is corroborative, and we perceive no sufficient reason for discrediting it. The account given by the tug's master of a conversation between himself and the captain of the Rogers, "on the road back to Camden," was duly objected to, and the objection was well taken. The statements of the latter were not relevant as admissions, for the libelant had in no way authorized them; nor as res gestæ, for both in time and space they were widely separated from the main transaction, and were simply narrative of past events. The Oil City Fuel Supply Co. v. Boundy, 122 Pa. 449, 15 Atl. 865. But, even if it had been admissible, this evidence would not have sufficed to relieve the tug from the consequences of its own default. The sheer which carried the Rogers against the "cribbing" was due to the unusual and excessive length of the hawsers, and the fact (if it be a fact) that she would not have been hurt if the cribbing had been in perfect condition would not absolve the tug from blame for having, by her negligence, produced the injury which actually resulted. If those responsible for her management had exercised due care, the cribbing would not have been struck at all; and, therefore, no matter what may have been its condition, she is answerable for the damage which was in fact caused by striking it.

The decree of the District Court is reversed, with direction to that court to enter a decree in favor of the libelant, and to appoint a master to ascertain and report the damages, in accordance with the customary practice.