## Garis *v.* Lehigh & New England Railroad Company, Appellant.

## Keller et al. *v.* Lehigh & New England Railroad Company, Appellant.

Argued April 15, 1936; reargued April 20, 1936. Before KEPHART, C. J., SCHAFFER, MAXEY, DREW, LINN, STERN and BARNES, JJ.

*E. J. Fox, Jr.,* of *Fox & Fox,* for appellant.

*Everett Kent,* for appellees.

OPINION BY MR. JUSTICE MAXEY, October 5, 1936:

At about 6:45 P. M., December 18, 1931, Chester Garis and Laura Keller were proceeding north on a state highway between Easton and Martin's Creek in an automobile owned and operated by Garis. They claimed that as they approached the single track grade crossing of the defendant company, they stopped at a point twenty-four feet from the near rail. According to their testimony they not only stopped but looked and listened for approaching trains. Though they continued, as they testified, to look and listen they neither saw nor heard any train. Shortly afterwards an engine of the defendant company, pushing a box car, struck the plaintiffs as they were on the track. The train stopped with the front end of the box car about half way across the road.

Garis, who was nearly twenty-one years of age at the time of the accident, brought suit in his own name for damages, and Silas Keller (father of the young woman victim) in his own right, and Laura Keller, by her father and next friend, also brought suit for damages. Miss Keller was eighteen years of age when the accident happened. She was awarded a verdict of $5300.00; her father, a verdict of $1610.60; and Chester Garis, a verdict of $5285. After the verdicts the defendant asked for judgment n. o. v. and for a new trial. These motions were refused. These appeals followed. Appellant contends that judgment n. o. v. should be entered because of plaintiff's contributory negligence and that if that is not done the verdicts should be reduced as excessive.

The road on which Garis and Miss Keller were traveling northward crosses the railroad at a slightly oblique angle and is slightly upgrade. There was a siding near this crossing in the direction from which the train came, and on the night in question there were fourteen cars on this siding. The nearest car was twenty-six feet from the bumper block, and the latter was a short distance

from the crossing. Even with cars standing on the siding, travelers approaching from the direction these plaintiffs approached could, before they reached the crossing, see along the track in the direction in which the train came, a distance of 145 feet. There is not the slightest foundation for the claim that there was an inadequacy of view which prevented Garis and Miss Keller seeing the oncoming box car. This box car was being pushed slowly and there was a headlight on the pushing locomotive. It is true that this headlight was facing close to the rear of the box car, but there was a diffusion of light from the headlight and this diffused and moving light was plainly visible to the plaintiffs had they been even ordinarily attentive. This on-coming car and locomotive were not only visible to any watching eye, they were also audible to any listening ear. It was plaintiffs' duty to stop, look, and listen before proceeding over this crossing. They claim they did perform this duty, but as this court said in *Bornscheuer v. Traction Co.*, 198 Pa. 332, 47 A. 872: "It is vain for a man to say that he looked and listened, if, in despite of what his eyes and ears must have told him, he walked directly in front of a moving locomotive." We also said in *Hawk et ux. v. Pa. R. R.*, 307 Pa. 214, 160 A. 862: "It is obvious that she [the plaintiff] was inattentive as she crossed the tracks, and inattention in that situation is negligence." In *Rhodes v. Pa. R. R.*, 298 Pa. 101, 147 A. 854, which was a railroad crossing case, this court said: "Plaintiff says they stopped the automobile when about six feet from the track. . . . No other train or traffic was moving in the vicinity and nothing to obstruct the view or deaden the sound of the approaching train. . . . It is as much the traveler's duty to listen as to look; he is as bound to hear what is audible as to see what is visible. Because of darkness or other obstructions to view, the sense of hearing is often vital." In *Paul v. P. & R. Ry. Co.*, 231 Pa. 338, 80 A. 365, this court said: "The unbending rule as to the duty of a

traveler on a public highway, as he approaches a railroad crossing over it, is to stop, look and listen. He must listen as well as look, for conditions may be such that though, when he stops at a proper place and looks, he cannot see a coming train, he yet must hear it if he listens. And if he then, in spite of what he hears, walks or drives on into almost instant collision with the train, he is as guilty of contributory negligence as if he had plainly seen its coming."

It is admitted that Miss Keller undertook to assist Garis in controlling the automobile as it approached the crossing. She told him to stop and he did, they both looked and listened, and then she told him to proceed. She too is barred from recovery, under the rule that a guest who undertakes to aid in driving a car by observing traffic conditions for the benefit of the driver cannot escape responsibility for an accident brought about by his own negligent directions: *Hill v. P. R. T. Co.*, 271 Pa. 232, 114 A. 634; *Rhodes v. P. R. R. Co.*, supra.

It is unnecessary to discuss the alleged negligence of defendant company except to say that plaintiffs claimed that the locomotive sounded no warning and that no employee was standing at the crossing to give any warning signals. Defendant company said that the whistle was blown and the bell rung, and that there was a trainman on the top of the car with a lighted lantern. On the question of defendant's negligence there was an issue of fact raised, but on the question of the contributory negligence of plaintiffs, their own testimony clearly convicts them of negligence as a matter of law. The court below should have so declared.

The judgments are reversed and judgment is herein entered for defendant n. o. v.