Valera, Appellant, *v.* Reading Company.
Morata, Appellant, *v.* Reading Company.

Argued November 23, 1943. Before MAXEY, C. J.,
DREW, LINN, STERN, PATTERSON and STEARNE, JJ.

*John L. Pipa, Jr.,* for appellants.

*Richard Henry Klein,* with him *W. I. Woodcock, Jr.,* for appellee.

OPINION BY MR. CHIEF JUSTICE MAXEY, March 28, 1944:

The plaintiffs, Lawrence Morata and Lawrence Valera, brought separate actions against the defendant, the Reading Company, on account of injuries sustained in an accident at a grade crossing. In the Valera case the defendant brought in Morata as an additional defendant. State highway route No. 54 in Northumberland County, intersects the Reading's railroad single track at Richard's Tunnel Crossing. On the night of November 14, 1941, an automobile driven by Morata, with Valera as a guest passenger, was struck at this crossing by the defendant's train. Both appellants were injured and the car was destroyed. The cases of these two plaintiffs were tried together and the trial judge directed verdicts for the defendant company. Motions for new trials were refused. These appeals followed.

On this state of the record we must assume that the plaintiff's evidence "disclosing the true version of what took place": *Grimes v. Pa. R. R. Co.,* 289 Pa. 320, 323. The facts as testified to are as follows: A single track of the defendant crosses public highway route No. 54 at right angles; the road runs north and south and the track east and west; the crossing is comparatively level. The highway at the crossing is 30 feet wide. A hill starts about 25 feet north of the crossing. The track as it approaches the crossing from the west has an ascending grade of 3.4%. In the day time one had a clear view of this track 400 or 500 feet.

The collision occurred at 7:30 o'clock on a dark and cold evening. The car's windows were closed. The plaintiff, Morata, was driving a 4-door Packard sedan northward, and Valera was sitting on his right side. As the

car approached the crossing, the driver saw a truck stopped ahead of him on the tracks, and he brought his car to a full stop about 25 feet behind it. A car coming down the hill with bright headlights prevented Morata passing the truck, and his car stopped for about a half minute. Morata testified that when the truck started he looked and listened and did not see or hear anything, that there was no light on the engine and that he "listened for a whistle and they didn't blow one" and there was no bell rung or any other warning given by the engine. In this he was corroborated by his guest passenger, Valera. Morata also said that he then proceeded to cross the tracks and at that time the other car which was coming down the hill passed on his left. That car was not struck. When his automobile was between the rails, he suddenly heard something and "saw a black thing coming toward" him. He couldn't tell what it was because "it was too quick for him and it hit" him. The passenger, Valera, testified that there was a second stop when they came to about two or three feet from the first rail before Morata drove on the crossing, although on cross-examination he said that he didn't "know as it exactly stopped but going real slow for time to look and listen". He looked up and down the track and heard no noise except noise from an air compressor in the compressor house on the colliery grounds of the Colonial Coal Company about 300 feet from the railroad on the right hand side of the road. It runs all day. The crossing was in total darkness. The plaintiffs were acquainted with the crossing. After the engine struck the car it traveled about 150 feet. The driver did not know how fast he was traveling nor did he know how fast the train was traveling.

The railroad company offered testimony directly contradictory to that of plaintiffs. The oral testimony of the defendant showed that the train consisted of an engine, five cars of loaded coal and a caboose; that both the

whistle and the bell were sounded in time to warn one at the crossing; that the electric headlight was shining on the engine on high beam, and that the train was traveling between six and ten miles an hour. The engineer testified that he saw the car coming 150 feet away from the crossing and the car did not stop at any time before it went over the crossing.

"It was the driver's duty to stop, look and listen before proceeding over this crossing . . . 'In *Paul v. P. & R. Ry. Co.*, 231 Pa. 338, 80 A. 365, this court said: "The unbending rule as to the duty of a traveler on a public highway, as he approaches a railroad crossing over it, is to stop, look and listen. He must listen as well as look, for conditions may be such that though, when he stops at a proper place and looks, he cannot see a coming train, he yet must hear it if he listens. And if he then, in spite of what he hears, walks or drives on into almost instant collision with the train, he is as guilty of contributory negligence as if he had plainly seen its coming." ' " *Garis v. Lehigh & New England R. R. Co.*, 324 Pa. 149, 152. In *Matesky v. Lehigh Valley R. R. Co.*, 312 Pa. 233, 236, we said: "Further it is not only the duty of a person about to cross a railroad to listen and look when he has stopped, but to continue to do so until he has safely passed beyond the tracks, 'the duty of constantly and carefully listening being as imperative as that of constantly and carefully looking: *Kolick v. Monongahela Ry. Co.*, 303 Pa. 463, 467."

The testimony of Morata, the driver, convicts him of a breach of the duty above defined. He testified that he "was fifteen or twenty feet away from the crossing when (he) looked the last time" and his car was then moving. He was under the duty of constantly and carefully listening and looking until he was out of danger. Morata was obviously inattentive when he drove onto and over this crossing and inattention in that situation is negli-

gence. See *Hawk et ux. v. Penna. R. R. Co.,* 307 Pa. 214, 220, 160 A. 862. The court below properly held that Morata could not recover damages.

As to appellant, Valera, the rule is well established that "the negligence of the driver of a vehicle can be imputed to a passenger therein only when the evidence justifies a finding of the passenger's right to a share in the control of that vehicle at the time of the negligence": *Rodgers v. Saxton,* 305 Pa. 479, 488, 158 A. 166. That statement is in accord with the Restatement-Torts, Vol. 2, Secs. 490 and 495. See *Delling v. McKnight,* 325 Pa. 251, 255, 188 A. 859, and *Landy v. Rosenstein,* 325 Pa. 209, 213. Valera had no right whatsoever to a "voice in the control, management or direction of the vehicle": *Hilton v. Blose,* 297 Pa. 458, 461, 147 A. 100. The instant case is distinguishable from *Garis v. Lehigh and New England R. R. Co.,* 324 Pa. 149, 188 A. 76, and *Burkman v. Anderson,* 324 Pa. 206, 188 A. 287, where the evidence showed that the guests shared in the control of the driving.

The company contends that Valera was guilty of contributory negligence, because he knew or should have known of the imminent danger and did not warn the driver of it, and it argues that he was negligent because he heard a noise and failed to investigate it. The noise he heard he identified as that of "the air compressor". His failure to investigate a noise in no way related to a moving train does not make him negligent. We said in *Nutt v. Penna. R. R.,* 281 Pa. 372, 377, 378, 126 A. 803. "The phrase, 'testing danger' used in many of our decisions, is not accurate as applied to a passenger who rides as an invited guest. It implies active participation in a reckless disregard of danger on the part of the driver, while as a matter of fact, this does not usually occur . . ."

In *Schlossstein et ux. v. Bernstein,* 293 Pa. 245, 142 A. 324, this court said that a passenger's "silence with regard to the driving is generally golden". In *Anzinger v. Pa. R. R. Co.,* 262 Pa. 242, 250, we said, "The tendency

of our decisions is to hold a passenger responsible for his actual negligence in joining with the driver in testing a danger he knows exists, and not for the result of mere inaction in failing to discover dangers of which he is ignorant, but might have discovered had he been giving attention to the roadway ahead of him." In *Vocca v. Penna. R. R. Co.*, 259 Pa. 42, 102 A. 283, we quoted the following with approval from the opinion in *Hermann v. R. I. Co.*, 36 R. I. 447, "It cannot be said as a matter of law that such a guest or passenger is guilty of negligence because he has done nothing. In many such cases the right degree of caution may consist of inaction. In situations of great and sudden peril, meddlesome interference with those having control, either by physical act or by disturbing suggestions and needless warnings, may be exceedingly disastrous in results. While it is the duty of such guest or passenger not to submit himself and his safety solely to the prudence of the driver of the vehicle, and that he must himself use reasonable care for his own safety, nevertheless he should not in any case be held guilty of contributory negligence merely because he has done nothing." See also Huddy Automobile Law, 5-6, p. 241, sec. 136.

The facts in this case do not justify the holding as a matter of law that Valera, the guest passenger, was guilty of negligence.

The judgment of the court below in No. 174, January Term, 1943, in which Lawrence Valera is the plaintiff-appellant, is reversed with a venire.

The judgment of the court below in No. 175, January Term, 1943, in which Lawrence Morata is plaintiff-appellant is affirmed.

DISSENTING OPINION BY MR. JUSTICE HORACE STERN:

I dissent from the affirmation of the judgment in which Lawrence Morata is the appellant. I fail to find in the evidence anything which convicts him of contribu-

tory negligence *as a matter of law.* He stopped, looked and listened when reasonably close to the track. He testified that there was no light on the engine and no whistle blown or bell rung. He was familiar with the crossing and was therefore justified in presuming that if a train were approaching he could see its headlight at least four or five hundred feet away. Not seeing any such light as he was about to go over the tracks there was apparently no need for further caution and for continued peering into the darkness. At any rate it would be for the *jury* to say, under such circumstances, whether he failed to exercise reasonable care.

Mr. Justice PATTERSON joins in this dissent.