## Selly, Appellant, *v.* Ciocca, Appellant.

Argued October 7, 1959. Before Jones, C. J., Bell, Jones, Cohen, Bok and McBride, JJ.

reargument refused December 9, 1959.

*Regis C. Nairn*, with him *Thomas F. Weis, Robert B. McKinley*, and *Weis & Weis*, for appellants.

*Leo Daniels*, with him *Prichard, Lawler & Geltz*, for appellees.

Opinion by Mr. Justice Bok, November 9, 1959:

Plaintiff, a passenger in an automobile, got a verdict against both its driver and the streetcar which ran into it. The verdict was for $15,000, which the court below reduced to $12,000. The court also gave judgment n.o.v. for the Pittsburgh Railways Company. Plaintiff and Ciocca, driver of the automobile, appealed this action, and Ciocca also appealed the judgment entered against him only.

Although the court in its opinion properly gave plaintiff the benefit of all inferences and resolutions of

conflict in the evidence, it was patently in error in saying that there was no competent evidence of the motorman's negligence. Both operators gave their version of the accident, and the jury was entitled to decide from the whole mosaic of the case what it chose to believe: *Taylor v. Mountz,* 387 Pa. 321 (1956), 127 A. 2d 730. A man's story is not automatically self-exculpatory.

The accident happened at the right-angled intersection of Sandusky and North Canal Streets in Pittsburgh on December 1, 1954. Sandusky is 40 feet wide, with double rails, and the streetcar was going north on it. North Canal is 38 feet wide, with what would be its southerly sidewalk an 8-foot loading zone for storage plants: Ciocca was going east on this street.

He testified that he stopped at a stop sign located on the northwest corner and then went on at not over five miles per hour. At the sign he looked both ways and saw nothing. It was almost 10:30 on a rainy night, the streets wet and the visibility not bad, despite the slight fog. He could see about twenty feet to the side. He was across the southbound track when he looked again to his right and for the first time saw the streetcar, 25 feet away. It came on and hit him near the right rear after he had travelled in a few seconds about three feet to a point three-quarters of the way across Sandusky and with his front free of the northbound rails. To the right there was an underpass beneath the Pennsylvania Railroad tracks and coming north there was a four per cent upgrade. Ciocca said he could see "five feet or so" from where he stopped at the stop sign into the tunnel formed by this underpass, and that when he looked that shallow distance into it he could see nothing coming. When he finally did see the streetcar he saw it by its front headlight.

The motorman said that he emerged from the tunnel at between 15 and 20 miles per hour. While still six feet in the tunnel he looked left and saw the automobile 30 feet west of the stop sign and coming at over 25 miles per hour, too fast to stop for the sign. He braked, hit the car while going five miles per hour, and stopped in six feet thereafter, some six or seven feet past the center of North Canal. A passenger, testifying for the Railways Company, said: "Well, this heavy jerk [in stopping] hit my neck and knocked me out for a little bit . . . They took me to the Allegheny General Hospital."

From these accounts the jury could have found that Ciocca didn't look to his right in time to see what was obviously there to see, and hence was negligent, under *Edmondson v. McMullen,* 381 Pa. 102 (1955), 112 A. 2d 642. They could also have found that the motorman, who saw the car at once, came out of the tunnel too fast to avoid what, legally or illegally, was there. Specifically, the jury could have believed that before leaving the tunnel at 15 to 20 miles per hour the motorman gave himself no chance to see in time to take action whether anyone was violating the stop sign. A man has a right to assume that others will obey the law, but it is a qualified right and he may not wholly ignore the possibility: *Martin v. Hoffman,* 365 Pa. 364 (1950), 75 A. 2d 529; *Jones v. Williams,* 358 Pa. 559 (1948), 58 A. 2d 57.

Because of the night, the dark, the rain, the tunnel, the heavy jerk and unsuccessful stop, the case presented a clear problem for the jury and its solution of finding both operators negligent should not have been disturbed.

The judgments are reversed and are here entered on the verdict, as remitted, against both defendants.

Mr. Justice BELL and Mr. Justice BENJAMIN R. JONES would affirm the judgment n.o.v. in favor of Pittsburgh Railways Co.