## Michaels, Appellant, *v.* Tubbs.

256

Argued December 7, 1971. Before WRIGHT, P. J., WATKINS, MONTGOMERY, JACOBS, HOFFMAN, SPAULDING and CERCONE, JJ.

*Carl A. Belin, Jr.,* with him *Belin and Belin,* for appellant.

*Joseph J. Lee,* for appellee.

OPINION BY CERCONE, J., April 13, 1972:

George William Michaels, Jr., a minor of fifteen years of age, was employed by the defendant, Blake Tubbs, as a summer chore boy on the Tubbs' farm in Clearfield County, Pennsylvania.

On August 31, 1965 the defendant sent his son David, age sixteen, and George to spread manure on a field leased by the defendant, which field was located one mile away from the Tubbs' farm. Each boy was driving a tractor, with George's tractor being slower and having an additional heavy forklift attachment which extended out five feet to the front. To reach the leased field the boys were required to operate their tractors over a freshly graded dirt township public road.

After finishing their chores in the field, the boys started back to the Tubbs' farm. It was raining. While operating their tractors on the public road, which had become muddy, George's tractor left the road and went down the embankment bordering the road, his tractor toppling over him and causing his death. Upon seeing George's badly mutilated head and brain matter exposed, David Tubbs drove to the nearest house, that of Kim Anderson, for help. There were no witnesses to the accident except the Tubbs boy.

The road traveled by the boys was only eighteen and three-quarters feet wide. The tractors were each seven feet wide. The road at the place of the accident was

bounded on one side by a ditch and on the other side by an embankment which dropped off. There were no guard rails on either side of the road.

Suit was instituted by the deceased boy's personal representative against Blake Tubbs. Liability of Tubbs for decedent's death was based upon the personal negligence of Blake Tubbs and the negligence of his servant and employee David Tubbs, his son.

After completion of evidence at trial defendant made a motion for binding instructions in his favor, which motion was granted. The trial court accordingly directed a verdict for defendant. Plaintiff then moved to remove the directed verdict and for new trial, which motion was refused. Hence this appeal.

Considering, as we must, the evidence in the light most favorable to plaintiff, and giving plaintiff the benefit of all facts favorable to her and all the reasonable inferences therefrom,[1] it is our decision that the court below erred in directing a verdict in favor of the defendant. There was ample evidence of record to support a jury's verdict in favor of the plaintiff on several bases.

First, the court below failed to give proper weight to the res gestae statement of David Tubbs. Mr. Kim Anderson testified that when David rushed to him for assistance within a few minutes after viewing George's mutilated head and exposed brain matter: "A. The first thing he [David] said as he came in the barn, wringing his hands, he said 'For God's sake Kim, come up and help me.' I said 'What's the matter David?' He said 'Billy went over the road in the tractor.' I said to him 'Is he fast?' and he said 'No'. Then I said 'Your place is to get your father and mother to come and help you.'

---

[1] *Thompson v. Gorman*, 366 Pa. 242 (1951); *Klatt v. Daniels*, 173 Pa. Superior Ct. 563 (1953); *Valera v. Reading Co.*, 349 Pa. 123 (1944).

Q. Did he say anything about his own actions coming down the road? A. He said 'Why did I try to pass him in the woods, why didn't I wait until I got down to your field?' "

This statement was also overheard by Richard D. Wilt who testified: "Q. What was his condition, Mr. Wilt? I mean what was Dave's appearance to you? A. He was wringing his hands and he looked scared. Q. What did he say when he came up to you? A. He says 'Billy went down over the bank and his face was cut' and he wanted to use the phone. Q. Then what happened? A. He said 'I wish I wouldn't have tried to pass him, I should have waited.' Q. 'I wish I wouldn't have tried to pass him. I should have waited.' A. Until he got further down."

David's statement as testified to by Mr. Anderson and Mr. Wilt to the effect that he should not have tried to pass the decedent but should have waited, meets all the tests of admissibility as a res gestae declaration. In *Allen v. Mack*, 345 Pa. 407 (1942), after quoting from Wigmore on Evidence, 2nd Ed., Vol. 3, Sec. 1747, page 738, the court makes its own definition of a res gestae declaration as follows: "A res gestae declaration may be defined as a spontaneous declaration by a person whose mind has been suddenly made subject to an over-powering emotion caused by some unexpected and shocking occurrence, which that person has just participated in or closely witnessed, and made in reference to some phase of that occurrence which he perceived, and this declaration must be made so near the occurrence both in time and place as to exclude the likelihood of its having emanated in whole or in part from his reflective faculties. In a res gestae declaration the exciting event speaks through the impulsive words of a participant or onlooker. It is in a psychological sense a part of the act itself. The apparent condition

of the declarant's mind when the declaration is made is the test of the latter's admissibility as a part of the res gestae. To make the declaration admissible the state of the declarant's mind as induced by the shock of the occurrence must be such as to integrate his spontaneous declaration exclusively with the occurrence itself." Certainly David Tubbs' statement to Mr. Anderson was a spontaneous declaration so close to the event and so engendered by the event itself as to have become a part thereof.[2]

The fact that David denied making the statement to Mr. Anderson, though he admitted he had come directly to the Anderson farm, "I would say at most, two or three minutes" after the accident, did not cancel out that statement as part of the evidence in the case. The credibility of the witnesses with respect to whether or not the res gestae statement was in fact made was for the determination of the jury, and David's denial was not automatically self-exculpatory. As stated in *Selly v. Ciocca*, 397 Pa. 409 (1959): "Both operators gave their version of the accident, and the jury was entitled to decide from the whole mosaic of the case what it chose to believe: Taylor v. Mountz, 387 Pa. 321 (1956), 127 A. 2d 730. A man's story is not automatically self-exculpatory." The res gestae statement being of evidence in the case, the jury could have determined therefrom that David did crowd George's large tractor loaded with the heavy forklift attachment off the road which, even though straight at that point, was muddy, narrow, and bordered by an embankment without guard rails. The jury could have further deter-

---

[2] No issue is raised as to the propriety of the admission of David Tubbs' statement in an action against the employer, for res gestae statements of an employee are admissible against his master: *Oil City Fuel Supply Co. v. Boundy*, 122 Pa. 449 (1888); *Campbell v. G. C. Murphy Co.*, 122 Pa. Superior Ct. 342 (1936).

mined that such action on the part of David, who admittedly was driving a faster tractor unburdened by any heavy forklift, was negligence which was the proximate cause of George's tractor toppling over the embankment and killing him. No impact between David's and George's tractors was necessary to constitute David's action to be negligence, as well stated by the Supreme Court of the State of Washington in *Zurfluh v. Lewis County*, 199 Wash. 378, 382-83, 91 P. 2d 1002, 1004 (1939) : "The requested instruction which the appellant says it was error for the court not to give was to the effect that it was not necessary for the appellant to prove that the truck, at the time it was passing the automobile, came in actual contact therewith, but that the negligence of the respondent county would be established if the evidence showed that the driver of the truck drove in such close proximity to the automobile in which the appellant was riding that the driver thereof, in the exercise of ordinary care, in order to avoid a collision, was forced into the loose gravel on the highway, and, by reason thereof, his automobile became unmanageable, and, as a result, the appellant suffered the injuries complained of.

"In order to sustain the negligence of Smith, the driver of the truck, it was not necessary that the truck and the automobile come in physical contact with each other. In Watkins v. Interstate Coach Co., 145 Wash. 221, 259 Pac. 393, 394, it was said: 'Great stress is laid by appellant upon the fact that the stage never came into physical contact with any of the cars. This is a matter of no moment, if it be once established that the driver of the stage was negligent in such a manner that the driver of the other car was placed in a position of peril.' "

This reasonable and logical approach has been followed by our Pennsylvania Supreme Court in *Thomp-*

*son v. Gorman,* 366 Pa. 242, 247 (1951): "Plaintiff was not struck or touched by defendant's automobile but correctly points out that bodily contact is not necessary. Where the natural result of the negligence of the defendant is to place the person injured in a position of danger, a mistake of judgment by the person injured, in the emergency thus created, does not relieve the defendant of liability, provided the emergency thus created or the position of danger was created by the defendant's negligence: Silfies v. American Stores Co., 357 Pa. 176, 180, 53 A. 2d 610; Polonofsky v. Dobrosky, 313 Pa. 73, 76, 169 A. 93; Community Fire Co. v. Pennsylvania Power & Light Co., 92 Pa. Superior Ct. 304, 309."

In addition, defendant Tubbs' liability could be sustained on the basis of his own personal negligence in failing to instruct the minor decedent as to how to operate the tractor on the road. The defendant's testimony with respect to his general instructions and general supervision regarding the operation of the tractor around the farm could easily have been found by the jury not to be sufficient to insulate him from liability, especially in view of his testimony that he gave no instruction to the minor decedent as to how to operate the tractor on this freshly graded road or as to the danger of the embankment. In *Tagg v. McGeorge,* 155 Pa. 368, 375 (1893), the court very clearly stated: "The law applicable to the issue is well settled. In the textbooks, and with rare exceptions in all the adjudicated cases, the rule laid down in substance is: When young persons without experience are employed to work with dangerous machines, it is the duty of the employer to give suitable instructions as to the manner of using them, and warning as to the hazard of carelessness in their use; if the employer neglects this duty, or if he give improper instructions, he is responsible for the

injury resulting from his neglect of duty." Defendant Tubbs' knowledge of the decedent's method of operation of the tractor around the farm did not obviate the necessity of particular instructions with respect to its operation on the public highway in question. In the early case of *Royer v. Tinkler*, 16 Pa. Superior Ct. 457 (1901), this court stated at 460: "But although a servant be as fully conscious of a danger incident to the discharge of a duty in a particular way as if he had been expressly warned of it, it does not necessarily follow that his employer is relieved of the duty to instruct him further. There may be two modes in which the duty can be discharged, one safe and the other dangerous, and if the servant be young and inexperienced, and be not instructed, it cannot be declared as a matter of law that the risk of making a wrong choice is one of the incidental risks which he accepted when he entered into the employer's service: Sheetran v. Trexler Stave & Lumber Co., 13 Pa. Superior Ct. 219."

The question of defendant Tubbs' negligence with respect to the failure to properly instruct the minor decedent was under the facts of this case a question for the jury's determination. As stated in *Rummel v. Dilworth*, 131 Pa. 509 (1890) at 520: "In view of the youth and want of experience in the business on the part of Rummel, it was necessarily a question for the jury whether his employer had sufficiently warned and instructed him about the dangers of the employment, and how to avoid them, or had done all that was reasonably necessary to protect him from injury."

For the above reasons the court below erred in withdrawing the case from the jury and directing a verdict in favor of the defendant. The record raises serious issues of liability of the defendant for the negligent acts of his employee and for his negligence by reason

of the failure to properly instruct the minor deceased employee.

The judgment of the court below is therefore reversed and the case remanded for a new trial consistent with the holdings of this opinion.