Sarah Hess *v.* Williamsport and North Branch Railroad Company, Appellant.

*Negligence—Railroads—Crossings—Positive and negative testimony.*

In a case against a railroad company for alleged negligence at a crossing where five witnesses for the company testify that lights were displayed, the bell rung and the whistle blown, and two witnesses for the plaintiff testify that they did not see the lights, nor hear the bell or whistle, it is reversible error for the court not to give adequate instructions as to the relative value of positive and negative testimony.

*Negligence—Railroads—Crossings—" Stop, look and listen."*

One who is struck by a moving train which was plainly visible from the point he occupied when it became his duty to stop must be conclusively presumed to have disregarded that rule of law and of common prudence, requiring him to stop, look and listen at a convenient distance from the railroad track before venturing to go upon it, and he will be presumed to have gone negligently into an obvious danger.

In an action against a railroad company to recover damages for the death of plaintiff's husband at a highway crossing, it appeared that the deceased at the time of the accident was driving a two horse team on a dark night. The locomotive was run with tender in front. The evidence for plaintiff was in effect that no light was shown on the tender, or signal given, and that the locomotive was run with speed. The highway before it made the crossing ran almost parallel with the railroad for one hundred and fifty feet, and then, in a distance of more than one hundred feet additional, reached the track. For the whole distance of two hundred and fifty feet the track on which the locomotive was coming was visible for nearly a mile. There was nothing to prevent the rumbling sound of the locomotive being heard, or the side glare from its headlight from being seen, for half a mile before the locomotive reached the crossing. *Held,* that a judgment and verdict for plaintiff should be reversed.

Argued March 15, 1897. Appeal, No. 284, Jan. T., 1896, by defendant, from judgment of C. P. Lycoming Co., March T., 1895, No. 82, on verdict for plaintiff. Before STERRETT, C. J., GREEN, WILLIAMS, McCOLLUM, MITCHELL, DEAN and FELL, JJ. Reversed.

Trespass for death of plaintiff's husband. Before SCHUY-LER, P. J., of the 3d judicial district, specially presiding.

The facts appear by the opinion of the Supreme Court.


The court charged in part as follows :

On the part of the plaintiffs a number of witnesses have been produced for the purpose of showing that there were no lights upon this engine or tender ; that the whistle was not blown prior to the accident, and that no bell was rung. Most of the testimony of the plaintiff bearing upon this part of the case is what is called negative testimony—that is, the witnesses testify that they did not see any lights upon the tender; that they did not hear any whistle, and that they did not hear any ringing of the bell. Negative testimony of this kind has much less weight than positive testimony. The contention of the plaintiff is that the testimony of the two witnesses, Bruce O. Beeber and Rebe Edwards, rises higher than mere negative testimony. You will remember those two witnesses. They allege that on the night of and immediately before the accident, they were traveling or walking upon the tracks of the Philadelphia & Reading railroad, or of the other railroad company, I don't remember which, and they were looking out for trains, and that they did not see any light upon this engine or its tender, and they did not hear any blowing of the whistle or any ringing of the bell. There are other witnesses who also testify that they did not hear any ringing of the bell or any blowing of the whistle, and that they did not see any lights upon this tender. That is the testimony which the plaintiff has adduced for the purpose of showing negligence upon the part of the defendant company.

On the part of the defendant a number of witnesses have been produced whose testimony is positive upon this question as to the ringing of the bell and the exhibition of the light. There was a crew consisting of five or six men upon this engine. They have been called, one after the other, as witnesses ; they have testified positively that instead of there being no lights upon the tender there were three lights there, one over the manhole, as I think it is called, and one on each side of the tender, and in addition to that there were two men stationed in the front part of the tender on a lookout for obstacles ahead. This is a very important part of the case ; if it is true that there were

three lights upon the tender, publicly exhibited, as claimed by the defendant; and if it is true, as these witnesses testify, that there was a whistle blown at the time that they picked up the flagman, some hundreds of feet, I don't remember how far, from the accident; and if it was true, furthermore, that from the time that they picked up the flagman until the time of the accident the conductor rang the bell continually, then I do not know of any further duty on the part of the defendant company, and I would say to you that if you believe the evidence of the members of this crew, that the lights were exhibited in the manner in which they testified, and that the whistle was blown and the bell was rung continuously down to the time of the accident, then the plaintiff can have no standing in court for the purpose of claiming that this defendant was guilty of negligence.

Defendant's point and the answer thereto among others were as follows:

10. That under all the evidence in the case the verdict must be for the defendant. *Answer:* Refused. [9]

Verdict and judgment for plaintiff for $10,000. Defendant appealed.

*Errors assigned* among others were (9) above instruction, quoting it; (10) that the court erred in its general charge in failing to define the comparative legal value of positive and negative testimony.

*Henry C. McCormick,* with him *Seth T. McCormick,* for appellant.—Where there is conflicting testimony as to whether a bell was rung or not before a train approached a grade crossing, the court should pointedly call the attention of the jury to the difference between positive and negative testimony upon a question of this kind: Urias v. Penna. R. Co., 152 Pa. 326; Bohan v. Milwaukee, Lake Shore & Western Ry., 61 Wis. 391.

The failure of the engineer to sound the whistle or ring the bell, if such were the fact, did not relieve the deceased from the necessity of taking ordinary precautions for his safety: Schofield v. Ry. Co., 114 U. S. 615; R. R. v. Houston, 95 U. S. 697; Telfer v. Northern R. R., 30 N. J. L. 188; Sheehan v. P. & R. R. R., 166 Pa. 354; Derk v. Northern Cent. Ry., 164 Pa. 243; Holden v. Penna. R. Co., 169 Pa. 1; Connerton v. Del., etc.,

Canal Co., 169 Pa. 339; Maryland v. Pittsburg, etc., R. R., 123 Pa. 487; Myers v. Balt. & Ohio R. R., 150 Pa. 386; Gangawer v. P. & R. R. R., 168 Pa. 265; Penna. R. Co. v. Beale, 73 Pa. 509.

*Wm. W. Hart*, with him *G. B. M. Metzger*, for appellee.— The question of whether the deceased had been guilty of contributory negligence was a question of fact for the jury: Schum v. Penna. R. Co., 107 Pa. 8–12; McNeal v. Ry. Co., 131 Pa. 184; Davidson v. Ry. Co., 171 Pa. 522; Ellis v. R. R., 138 Pa. 506; Ely v. Ry. Co., 158 Pa. 233; Fisher v. Ry. Co., 131 Pa. 292; Hoffmeister v. Penna. R. Co., 160 Pa. 568.

The steam whistle, and not a bell, is the proper signal to be given by an engine approaching a public crossing in a rural district at a high rate of speed: Longenecker v. Penna. R. Co., 105 Pa. 328; Neward v. Penna. R. Co., 153 Pa. 417; Penna. R. Co. v. Ogier, 35 Pa. 60.

OPINION BY MR. JUSTICE DEAN, May 27, 1897:

The defendant's employees, at about eight o'clock in the evening of August 25, 1894, ran a locomotive and tender over the Philadelphia and Reading railroad. There were upon the locomotive and tender a conductor, brakeman, engineer, fireman and flagman; the locomotive was running at about the rate of eighteen miles an hour, the tender in front, towards Montgomery station. About a mile from the station is a highway grade crossing, and on the crossing it collided with a two horse lumber team, then being driven by James T. Hess, the husband of plaintiff, who was seated on top of his load; he was fatally injured by the collision, and plaintiff brought this suit for damages, averring the accident was the result of negligence of defendant in running the locomotive with speed, tender in front, and in not giving warning of its approach to the crossing. The court below submitted the evidence of defendant's negligence and contributory negligence on part of deceased to the jury, who found for plaintiff in sum of $10,000. We now have this appeal by defendant, assigning principally for error the refusal of the court to peremptorily instruct the jury that, on the undisputed facts, deceased was guilty of contributory negligence in using the crossing when the locomotive in full view was approaching it.

On the undisputed facts was deceased negligent? The five persons on the locomotive, whose duty it was to give warning or see that it was given, each testified positively that lights were displayed, bell rung and whistle blown on approaching the crossing; two witnesses walking along the track testify negatively they did not see the lights nor hear bell or whistle. Although the decided weight of the evidence on this point was with defendant, we assume that there was more than a scintilla on part of plaintiff, for, the learned judge of the court below, with the witnesses before him, thought so, and submitted the dispute on that evidence to the jury. His instructions, however, as to the relative value of positive and negative testimony were very meager; they were inadequate, in view of the nature of the testimony, and in this particular, under the authority of Urias v. Railroad Company, 152 Pa. 326, there was error.

But under the authorities, how stands the case on other undisputed evidence? The highway, before it makes the crossing, runs almost parallel with the railroad for one hundred and fifty feet, and then, in a distance of more than one hundred feet additional, reaches the railroad track where the collision occurred; and for this whole distance of more than two hundred and fifty feet the railroad track on which the locomotive was coming was visible for nearly a mile. Assuming deceased stopped, looked and listened at any point of this two hundred and fifty feet he must have been apprised of the coming danger, and have been able to avoid it, if there was no insuperable obstacle to sight and sound. It is alleged, however, the night was dark, and he could not see the locomotive, because no lights were on the tender; but the locomotive headlight, with all its glare, was on the front of the engine; this light was reflected outside the rails on each side; the body of the engine could not obscure it entirely; the fires under the boilers were doing their work; the stroke of the lever was kept up; the exhaust of the engine did not cease; the rumbling of the wheels on the rails was not muffled; the undeniable fact is that there were sight and sound of this engine for half a mile before it reached the crossing. We say undeniable, because to deny it is out of accord with the proof and our observation and experience. We must, in the administration of justice, adopt that as truth which our ordinary senses demonstrate to be true. If this unfortunate

man could see and hear, which is not questioned, then before he drove on the track he saw and heard this coming engine and, miscalculating the speed of his own team as compared with that of the locomotive, met his death; the law calls this contributory negligence, and prohibits a recovery. " One who is struck by a moving train which was plainly visible from the point he occupied when it became his duty to stop must be conclusively presumed to have disregarded that rule of law and of common prudence, and to have gone negligently into an obvious danger:" Myers v. Railroad Co., 150 Pa. 386; Marland v. Railroad Co., 123 Pa. 487; Gangawer v. Railroad Co., 168 Pa. 265.

The judgment is reversed.