Kolich *v.* Monongahela Railway Co., Appellant.

Argued March 17, 1931. Before FRAZER, C. J., WALL-
ING, SIMPSON, KEPHART, SCHAFFER and MAXEY, JJ.

*Dean D. Sturgis,* for appellant.—Plaintiff was a trespasser and if not was guilty of contributory negligence: Gray v. R. R., 293 Pa. 28; Bailey v. R. R., 220 Pa. 516; Buckley v. R. R., 275 Pa. 360; Phila. & Reading R. R. v. Hummell, 44 Pa. 375; P. R. R. v. Beale, 73 Pa. 458; Provost v. R. R., 265 Pa. 589; Carroll v. R. R., 12 W. N. C. 348; Lunzer v. R. R., 296 Pa. 393.

There was no affirmative or positive testimony that defendant was negligent: Haskins v. R. R., 293 Pa. 537.

The plaintiff did not establish a permissive crossing: Conn v. R. R., 288 Pa. 494.

*E. D. Brown,* with him *H. S. Dumbauld,* for appellee. —Plaintiff's first burden is to affirmatively show that he was not a trespasser on defendant's property. This he undertook to do by evidence that seems to clearly establish his status as a licensee, and the place at which he was injured, as a permissive crossing: Conn v. R. R., 288 Pa. 494.

Plaintiff's next duty was to show that he was injured by reason of defendant's negligence. In performance of this duty he produced witnesses to corroborate his statement that as the tender approached the crossing it gave no warning, either by light, whistle or bell.

Plaintiff's next duty was to show that his own negligence in no manner contributed to his injury.

To do this he must rely largely upon his own testimony; he gives a detailed statement as to what he did as he approached the crossing and undertook to pass over it in his journey to his own home: Kuntz v. R. R., 206 Pa. 162.

Opinion by Mr. Justice Simpson, April 20, 1931:

Defendant appeals from a judgment for plaintiff, and assigns as error (1) the refusal of the trial judge to give binding instructions in its favor, and (2) the action of the court in banc (one judge dissenting) in dismissing its motion for judgment non obstante veredicto. The verdict for plaintiff, approved by the court below, requires us, in considering these assignments, to ignore such parts of defendant's testimony as conflict with the evidence supporting plaintiff's contention. From this standpoint, the essential facts may be briefly stated as follows:

Plaintiff was a coke burner, working on a night shift. On the day of the accident, he left his place of employment at 5 a. m. to return home. It was dark and foggy, and he says that objects more than ten or fifteen feet off were not visible; one of his witnesses saying, however, "You could see, I would say, about ten steps," which would be approximately twenty-five feet. For over a mile plaintiff traveled longitudinally on defendant's right-of-way, the first part of the time between the rails of the single track there laid, and the last part in the space between two tracks. Had he been injured while in either place, he would have been debarred of recovery: Gray v. P. R. R. Co., 293 Pa. 28, 32. He traversed both safely, however, and reached a point where there was a grade crossing over the railroad tracks, at right angles to the direction he had been traveling. At each end of this crossing was a permanent sign, which defendant had long previously erected, plainly stating: "Caution. Do not walk nor trespass on the railroad." Despite these signs, pedestrians constantly used the cross-

ing just as before, and did this, so far as appears, without any other objection by defendant. After plaintiff reached the crossing, he used it to pass over defendant's railroad track, knowing that it was frequently used by defendant's trains, while engaged in shifting operations at that time of the morning. Nothing obscured his vision but the darkness and the fog. He says, "I took one step, two steps and three steps, and when I made the third step," it was "right in the middle of the track I was when I was hit" by a shifting train of defendant. This train, which came from plaintiff's left and was moving at right angles to his line of travel on the crossing, was going at not exceeding ten miles an hour, and, as his witnesses say, did not sound its whistle or ring its bell, and had no light on its forward end, to give warning of its approach to those using the crossing. The trial judge left to the jury to determine whether or not plaintiff was then using a permissive crossing, despite the existence of the warning signs above quoted. The accuracy of this submission is a matter of grave doubt, but it is not before us for review, since the effect of the signs, as conclusively showing that defendant did not impliedly consent to the use of the crossing, was not a subject of contest in the court below (being noticed in the dissenting opinion only), and is not referred to, directly or indirectly, in defendant's statement of the questions involved in this appeal. It is, therefore, a matter not to be considered by us: Foulk v. Hampton, 299 Pa. 272; New York & Penna. Co. v. New York Central R. R. Co., 300 Pa. 242. Those interested in the subject, however, will find abundance of food for thought in Kremposky v. Mt. Jessup Coal Co., Ltd., 266 Pa. 568; Metzler v. Phila. & Reading Ry. Co., 28 Pa. Superior Ct. 180; Hess v. Atlantic City R. R. Co., 95 N. J. Law 494; Chicago, Rock Island & Pacific Ry. Co. v. Austin, 63 Okla. 169; Missouri, Kansas & Texas Ry. Co. v. Wolf, 76 Okla. 195; Holt v. Texas Midland R. R., 160 S. W. (Texas) 327; Williamson v. Southern Ry. Co., 104 Va.

146, and Great Northern Ry. Co. v. Thompson, 199 Fed. 395, with the elaborate note thereto in 47 L. R. A. (n. s.) 506.

The jury's finding that this was a permissive crossing, —aside from the effect of the warning signs, which, as we have shown, is not subject to review by us,—had ample evidence to support it, as had also their finding that defendant was guilty of negligence in giving no warning of the approach of its train thereto. This leaves open only the question of plaintiff's contributory negligence, which we think was clearly established.

It was not sufficient that, before he started, he stopped, looked and listened, as he says he did several times, but he was required to look and listen, constantly and with the utmost care, until he had safely passed over the track (Tull v. Baltimore & Ohio R. R. Co., 292 Pa. 458; Massinger v. Reading R. R. Co., 300 Pa. 6), the duty of constantly and carefully listening being as imperative as that of constantly and carefully looking: Rhodes v. P. R. R., 298 Pa. 101; Paul v. Phila. & Reading Ry. Co., 231 Pa. 338, 342. Plaintiff says he heard no bell ringing, whistle blowing, nor noise of any kind before he started to use the crossing; but he does not say that he did not see or hear anything after he started, nor that he was giving any attention to either matter before he entered on the track, though this was his imperative duty: Tull v. Baltimore & Ohio R. R. Co., supra. Under such circumstances, the law as epitomized in the first syllabus of Lunzer v. Pittsburgh & Lake Erie R. R., 296 Pa. 393, clearly applies: "One about to cross a railroad at grade, must exercise great caution and have his senses alert to apprehend his surroundings, and to see and hear those things which would be manifest to him had he done so; failing to see or hear what he could or ought to have seen or heard, he cannot visit liability on the railroad company if disaster overtakes him as he proceeds across its tracks." On this occasion, plaintiff's duty was even greater than it otherwise would have been, because of

the darkness and fog, and because he knew the track he was about to cross was frequently in use at the time of day the accident occurred.

We can take judicial notice of the fact that a man's average step is about two and a half feet, and that ordinarily, when walking with a purpose, he takes two steps each second. There is no evidence that plaintiff in any way varied from these averages, and, considering the character of the night and the position he was in, he was obliged to hasten rather than to retard his movements. When he turned southward on the crossing he was, therefore, seven and one-half feet from the middle of the track where he was struck, and the train, which was traveling at not exceeding ten miles an hour, was not over twenty-one feet from that point. If his witness's estimate was correct, the train was in view before he started to cross. Being but three steps away from the middle of the track, his first step did not bring him to its nearest rail, and the train was then but fourteen feet from the point of collision. He admits that, despite the darkness and fog, he could see for ten or fifteen feet. Had he been attentive, therefore, he must have seen and heard the dark and looming object which was nearly upon him. His explanation is: "I could not see the engine because I was looking in front, not behind." At that time, however, the train was coming towards him from his left, at right angles to his line of travel, not behind him, and a slight turn of the head would have disclosed its proximity, as would also even a slight attempt to hear, unless he was hard of hearing, which is not asserted. We can reach no other conclusion than that he could and would have both seen and heard the train, before he stepped on the track where he was struck, had he given such attention as the law required of him. His failure in these respects, convicts him of contributory negligence: Bardis v. Phila. & Reading Ry. Co., 267 Pa. 352; Lunzer v. Pittsburgh & Lake Erie R. R., supra.

The judgment of the court below is reversed and judgment is here entered for defendant non obstante veredicto.