Matesky et al., Appellants, *v.* Lehigh Valley Railroad Company.

Bethlehem National Bank, Admr., Appellant, *v.* Lehigh Valley Railroad Company.

Argued April 17, 1933. Before FRAZER, C. J., SIMPSON, KEPHART, SCHAFFER, DREW and LINN, JJ.

R. C. *Mauch,* for appellants.

E. J. *Fox, Jr.,* of *Fox & Fox,* for appellee.

PER CURIAM, June 30, 1933:

These three actions for damages, alleging negligence in a railroad-automobile collision, were tried as one in the court below and so treated on appeal. After trial and verdicts rendered for plaintiffs, the court in banc granted defendant's motion for judgment non obstante veredicto in each case. The action of the court in so directing must be sustained, as the record clearly discloses that Joseph Matesky, who was killed, and his son Solomon Matesky, who suffered injury, the subjects of the accident, were guilty of contributory negligence as a matter of law.

Joseph and Solomon Matesky were riding southward along the highway from Easton to Freemansburg, in Northampton County, in a Dodge sedan; Joseph Matesky driving, with his son, a boy of fifteen, on the front seat beside him. On a section of the highway called Freemansburg Avenue, in Palmer Township, the road crosses a branch of defendant's railroad at grade. At this point the railroad, a single track line, makes a wide curve, the highway crossing being near the apex of the arc; the automobile approached on the inside of the

curve. For some distance along the left-hand (easterly) side of the road, obstructions consisting of buildings of various descriptions, storage tanks, and an earth bank along the highway interfere to some extent with a view of the railroad. The minor plaintiff testified his father stopped the car after they were past the buildings located 75 to 85 feet from the crossing, where they had an unobstructed view of the track for 180 feet, except for a small wagon trailer, a shack on wheels standing near the track. As they neared defendant's railway, the view was somewhat more extended. The minor plaintiff testified they continued to look, without again stopping, and neither saw nor heard the locomotive and tender backing slowly toward them on their left, until the moment it hit the automobile, which was then squarely in the middle of the track.

Regarding the evidence only from the angle of whether the occupants of the automobile, if they had listened with a reasonable degree of attention, could have heard the approaching engine, the testimony of plaintiffs' witnesses convicts them of carelessness in this regard. One of plaintiffs' witnesses, Mrs. Metz, who lived "a couple of hundred feet......about half a block" from the railroad, testified that, although the locomotive was coming slowly and without a load, "it did not make an awful lot of noise," yet she could, from her house, hear it making a noise "like steam coming out." Other witnesses, including the trainmen, testified the whistle was blown for the crossing and bell rung. Even though the trainmen omitted to give signal by whistle and bell of their approach to the crossing, no reason appears why the noise made by the locomotive, heard by Mrs. Metz and other witnesses, could not also have been heard by the Mateskys, in the car, had they listened. The only testimony relating to the noise made by the engine of the car was that of Solomon Matesky who said the engine was running "quietly and smoothly." The record fails to show any noise in the neighborhood which might have drowned

the sound of the locomotive. Moreover, Solomon Matesky testified that, after having stopped the car with the engine in high gear, they had attained a speed of 20 to 30 miles in covering the 75 feet between the stop and the track, which, as the court below points out in its opinion, rendered it impossible to listen with that degree of caution required of persons approaching a railroad, not only when they stop but until they are actually on the track. As said in Rhodes v. P. R. R., 298 Pa. 101, 105: "The unbending rule as to the duty of a traveler on a public highway, as he approaches a railroad crossing over it, is to stop, look and listen. He must listen as well as look, for conditions may be such that though, when he stops at a proper place and looks, he cannot see a coming train, he yet must hear it if he listens." Further it is not only the duty of a person about to cross a railroad to listen and look when he has stopped, but to continue to do so until he has safely passed beyond the tracks, "the duty of constantly and carefully listening being as imperative as that of constantly and carefully looking": Kolich v. Monongahela Ry. Co., 303 Pa. 463, 467. In the present case, the engine, running slowly, must have been quite close at the time the travelers attempted to cross the track, and whether or not it could have been seen, plaintiffs' own evidence shows that, with proper care, it could at least have been heard.

The judgment is affirmed.