Ray *v.* Lehigh Valley Railroad Company,
Appellant.

Argued January 21, 1936. Before KEPHART, C. J.,
MAXEY, DREW, LINN and BARNES, JJ.

*Clarence Balentine,* of *Kelly, Balentine, Fitzgerald & Kelly,* with him *J. Hayden Oliver,* for appellant.

*Walter L. Hill,* of *O'Malley, Hill, Harris & Harris,* for appellee.

OPINION BY MR. JUSTICE BARNES, April 20, 1936:

Caroline Ray brings this action of trespass to recover damages for the death of her husband, Harry Christopher Ray, who died from injuries received in a collision between an automobile which he was driving and a train of the defendant company. From the judgment entered on the verdict in plaintiff's favor defendant has appealed, assigning as error the overruling of its motions for binding instructions and for judgment n. o. v.

When the evidence is viewed in the light most favorable to plaintiff, as it must be on this appeal from the refusal of defendant's motion for judgment,* it establishes the following facts: Plaintiff's husband was employed as a laborer at the No. 14 Colliery of the Pittston Coal Company, located along the main highway between Wilkes-Barre and Scranton. An unpaved road leads from the main highway to the colliery and crosses at grade six railroad tracks. This is known as "No. 14 Crossing." The first of these tracks as the crossing is approached from the highway, is the main eastbound track of the defendant company; next follow the west-

---

* *Mountain v. Am. Window Glass Co.,* 263 Pa. 181; *Muehlhof v. Reading Co.,* 309 Pa. 17; *Koontz v. B. & O. R. R. Co.,* 309 Pa. 122.

bound track and a storage track of the defendant; then two tracks of an interurban railway company, and finally, a single track of the Erie Railroad. Forty feet from the crossing there is an unobstructed view of a thousand feet in the direction from which came the train which struck the decedent.

On the evening of October 23, 1930, plaintiff's husband, driving a Ford touring car, left his home in Scranton to go to work. He took with him as a passenger Gregory Jenkins, the miner with whom he worked and for whom he was the laborer in the mine. Following the highway to Wilkes-Barre they turned off onto the unpaved road and reached the No. 14 Crossing at about 9 : 35 p. m. As they were in the act of crossing the first or eastbound track of the defendant company, a train owned and operated by the defendant struck the automobile and demolished it. From the injuries which he received plaintiff's husband died within a few hours; Jenkins was killed instantly. There was no eyewitness to the accident.

The train involved was composed only of a tender, locomotive and caboose running in that order, the rear end of the tender being the front of the train; it approached the crossing from the direction of Scranton at a speed of about thirty miles an hour. According to plaintiff's witnesses it gave no warning by whistle or bell, and was illuminated only by two white "marker" lights, each about three inches in diameter, hung at the upper corners of the tender. This was the only light cast in front of the train, but a flare caused by the reflection of the locomotive headlight against the wall of the caboose was also visible to anyone looking at the train. The night was dark and misty, and a light drizzling rain had begun to fall about fifteen minutes before the accident. The crossing was, however, lighted to some extent by the glow from the glass-walled colliery and by a large red neon sign on the front of the building. At the moment of impact the automobile was about halfway

across the track, and the coupler of the tender tore a hole in the side of the car just in front of the left rear door.

One of defendant's principal contentions is that the testimony of plaintiff's witnesses is not sufficiently definite and positive to serve as a basis for a finding that no whistle or bell was sounded. It is unnecessary for us to pass upon this question, for we are of opinion that the circumstances of this unfortunate accident prove the decedent to have been guilty of such contributory negligence, regardless of any negligence in the operation of the train, as to bar any recovery of damages for his death.

The instant case is clearly governed by the familiar rule, first enunciated in *Carroll v. P. R. R. Co.*, 12 W. N. C. 348, that "it is vain for a man to say that he looked and listened, if, in spite of what his eyes and ears must have told him, he walked directly in front of a moving locomotive and was immediately struck." Although decedent had an unobstructed view for over a thousand feet in the direction from which the train came, his automobile was struck when only halfway over the first track. While one losing his life in a crossing accident is presumed to have used due care *(Tull v. B. & O. R. R., 292 Pa. 458; Ehrhart v. York Rys. Co., 308 Pa. 566; Brown v. Reading Co., 310 Pa. 516)*, this presumption is conclusively rebutted when the facts as to the occurrence of the accident prove that the decedent could not have performed his legal duty to stop, look and listen before attempting the crossing: *Hazlett v. Director General, 274 Pa. 433; Zotter v. Lehigh Valley R. R. Co., 280 Pa. 14; Grimes v. P. R. R. Co., 289 Pa. 320.* Such is the situation before us. At the rate of thirty miles an hour, the train was moving forty-four feet a second. If decedent was driving his car at the slow rate of five miles an hour, the train was only eighty-eight feet from the crossing when he was fifteen feet from the point where he was struck. Had he looked and listened at that time, when

he was still in a place of safety, he must have seen and heard the train so short a distance away. And the greater the speed at which decedent was traveling, the closer the train would have been when he was at that point. Even if the night was dark and the train improperly lighted, the marker lights, to say nothing of the sidewise flare of the headlight, would have given decedent a warning which he must have perceived had he looked. Moreover, it is a matter of judicial notice that locomotives do not proceed silently and defendant's train was so close to the crossing that with proper care decedent should have heard it (Hess v. Williamsport R. R. Co., 181 Pa. 492; Matesky v. Lehigh Valley R. R. Co., 312 Pa. 233; Paul v. P. & R. Ry. Co., 231 Pa. 338; Kolich v. Monongahela R. Co., 303 Pa. 463). As was said in Hess v. Williamsport R. R. Co., supra, at page 496: "It is alleged, however, the night was dark, and he could not see the locomotive, because no lights were on the tender; but the locomotive headlight, with all its glare, was on the front of the engine; this light was reflected outside the rails on each side; the body of the engine could not obscure it entirely; the fires under the boilers were doing their work; the stroke of the lever was kept up; the exhaust of the engine did not cease; the rumbling of the wheels on the rails was not muffled; the undeniable fact is that there were sight and sound of this engine for half a mile before it reached the crossing." Also in Matesky v. Lehigh Valley R. R. Co., supra, at page 236: "In the present case, the engine, running slowly, must have been quite close at the time the travelers attempted to cross the track, and whether or not it could have been seen, plaintiff's own evidence shows that, with proper care, it could at least have been heard." The manner in which the accident happened proves beyond a doubt that the decedent either failed to look and listen for the approaching train, or that, having observed it, he took the chance of an attempt to cross in front of it. In either case he was negligent, and the de-

fendant is not to be held liable for damages for the consequences of his carelessness: *Zotter v. Lehigh Valley R. R. Co.*, supra; *Radziemenski v. B. & O. R. R. Co.*, 283 Pa. 182; *Kemmler v. Pa. Co.*, 265 Pa. 212. A careful study of this record convinces us that the negligence of the husband of plaintiff was a contributing cause of this unfortunate accident, for which the defendant cannot be held answerable in damages.

Judgment is reversed and here entered for defendant.