Burkman, Exrx., *v.* Anderson (Baltimore and Ohio Railroad Co., Aplnt.).

Argued October 8, 1936. Before SCHAFFER, MAXEY, DREW, LINN and STERN, JJ.

*E. V. Buckley,* with him *Pugliese & Evans,* for appellant.

*H. Fred Mercer,* with him *Anne X. Alpern,* for appellee.

OPINION BY MR. JUSTICE SCHAFFER, November 23, 1936:

Elmer S. Burkman, while a guest in the automobile of the defendant, Walter C. Anderson, was killed when traversing a grade crossing of the Baltimore and Ohio Railroad Company, when the automobile collided with a freight train and was thrown by that train against a passenger train. The widow of Burkman began suit against Anderson, who, by writ of scire facias, brought the railroad company into the action as additional defendant. Pending trial the widow died and her executrix was substituted as party plaintiff. Verdict was recovered against both defendants and from the judgment entered the railroad company brings this appeal.

The accident took place on the night of January 19, 1934, about 8:45 o'clock. Anderson, the owner of the automobile, drove it. He was taking Burkman home. The latter directed him how to go, as Anderson was not familiar with the route. He had never been over the grade crossing where the collision took place. As they approached the crossing, red signal lights were flashing. Anderson testified that he saw them so doing, when they were driving toward the railroad, from a point 150 feet distant from the tracks. Whether he stopped the automobile before entering upon the first track is not altogether clear from his testimony. He did stop when he was on the first track. The view of the crossing to the right was obstructed by a building and the car was

driven onto the first track in order that a view to the right might be had. Anderson said he saw the headlight of an engine and a train to his left on that track at a distance he thought to be at least two squares away, far enough away he concluded for them to proceed. The signal lights were still flashing. He said he and Burkman consulted together and decided it was safe to go across. He further said he surmised that the signal lights were flashing for the train coming from his left. It was a passenger train. He then started the automobile forward, having looked to the right and having seen or heard nothing coming from that direction, although he said it was quiet. He said Burkman also looked to the right, that he asked Burkman if it was all right on his side (he was on the right) and Burkman answered that it was all right and said "Go ahead." When the front of the automobile got to the center of the second track, they were struck by a freight train which approached from their right traveling at 35 to 50 miles an hour, pulled by two engines and consisting of 72 cars. The automobile was thrown back against the passenger train. Burkman was killed. Anderson testified that he had not seen or heard the freight before it hit them, that no bell was rung or whistle blown, and that the engine had no headlight. Anderson and other witnesses called by plaintiff testified that it was a foggy night.

We then have this situation: Two men drive onto the track of a railroad in face of flashing red signal lights. They stop on the first track, the signal lights still flashing, consult together, decide that it is safe to proceed, do so, and are struck by a double headed 72-car freight train as soon as they get on the second track. We can imagine no conduct more negligent than this. The customary signal for danger is a red light, such were the signal lights. The situation was just the same as if a crossing tender had been at the crossing, waving a red lantern, which the occupants of the automobile saw, dis-

regarded, and drove past into danger. Their duty was to stop before going upon the crossing and to stay stopped until the signal lights ceased to give warning.

We are not required to give the usual consideration to the fact of Burkman being a guest in the car. He was familiar with the crossing, Anderson was not. He consulted with and advised Anderson about what to do; he, Burkman, was on the right side of the automobile, the side nearest the approaching freight train; he looked to the right and told Anderson it was all right on that side and to go ahead. Both men were negligent, Burkman actively so. His lack of care was the moving finger which wrote his death. "A guest in the automobile is charged with the same duty as its driver, if he knows it is about to cross the tracks. . . . Not only must those charged with such a duty, stop, look and listen before starting to cross the tracks, but they must also continue to look and listen, constantly and with the utmost care, until the automobile has passed safely over the tracks. A failure to do so is contributory negligence": *Schwenk v. Penna. R. R. Co.,* 315 Pa. 434, 174 A. 1. A guest in an automobile who sits beside the driver with full knowledge of the surroundings and makes no protest, joins in testing the danger and is charged with contributory negligence: *Morningstar v. N. E. Penna. R. R. Co.,* 290 Pa. 14, 137 A. 800; *Rhodes v. Penna. R. R.,* 298 Pa. 101, 147 A. 854; *Curry v. Riggles,* 302 Pa. 156, 153 A. 325. Here, not only did Burkman not protest, but he advised the movement of the car into danger: *Rhodes v. Penna. R. R.,* supra.

It is difficult to understand why these two men did not hear the freight train. Anderson said the night was quiet, still. Leonard, plaintiff's witness, heard it. He was much farther away, over 125 feet from the railroad. It was a long, heavy train drawn by two engines, and struck the automobile as soon as it reached the track along which the train was coming. What was said by Mr. Justice DEAN many years ago in *Hess v. Williams-*

*port, etc., R. R. Co.,* 181 Pa. 492, 496, 37 A. 568, applies to the situation now before us: "The fires under the boilers were doing their work; the stroke of the lever was kept up; the exhaust of the engine did not cease; the rumbling of the wheels on the rails was not muffled." The case in hand closely parallels *Rhodes v. Penna. R. R.,* supra, in all its essential facts. In that case we said (p. 104): "It is as much the traveler's duty to listen as to look; he is as bound to hear what is audible as to see what is visible. Because of darkness or other obstructions to view, the sense of hearing is often vital. . . . For the traveler to say he did not hear the oncoming train, is as vain as to say he did not see it in broad daylight. If they stopped to listen for the train they must have heard its approach, and, in attempting to cross in front of it, took the chances." See to the same effect: *Kolich v. Monongahela R. R. Co.,* 303 Pa. 463, 154 A. 705; *Matesky v. Lehigh Valley R. R. Co.,* 312 Pa. 233, 167 A. 306; *Ray v. Lehigh Valley R. R. Co.,* 321 Pa. 538, 184 A. 445; *Garis v. Lehigh and New England R. R. Co.,* 324 Pa. 149, 188 A. 76. The greater the difficulty of seeing or hearing a possibly approaching train, the greater is the care required of one crossing a railroad at grade: *Kolich v. Monongahela R. R. Co.,* supra.

We do not recognize *Wade v. Penna. R. R. Co.,* 307 Pa. 259, 161 A. 71, as an authority to justify the submission of this case to the jury. There, a crossing bell was ringing, while here, the universally recognized danger signals, red lights, were warning the two men in the automobile to keep off the tracks. If such a warning may be disregarded, then none is sufficient.

In view of the clear contributory negligence of the deceased, there can be no recovery for his death.

The judgment is reversed and is here entered for defendant, The Baltimore and Ohio Railroad Company.