Harris *v.* Reading Company, Appellant.

Argued November 27, 1936. Before KEPHART, C. J., MAXEY, DREW, LINN, STERN and BARNES, JJ.

*Henry R. Heebner,* with him *Wm. Clarke Mason,* for appellant.

*George H. Detweiler,* for appellee.

OPINION BY MR. JUSTICE BARNES, January 18, 1937:

The plaintiff, a father, sued to recover damages for the death of his son, Chester W. Harris, age 21 years, and unmarried, who was killed by one of defendant's trains while driving a truck across its tracks at a public crossing. A verdict was rendered in favor of the plaintiff; defendant's motions for a new trial and for judgment non obstante veredicto having been overruled, judgment was entered on the verdict, from which defendant appeals.

From the evidence it appears that on March 16, 1933, plaintiff's son was driving an automobile truck laden with meat, from Locustdale, Schuylkill County, to Shamokin, Northumberland County. The truck was pro-

ceeding in a northerly direction on the Yellow Hill road, a public road of macadam construction, between Locustdale and Shamokin. The accident happened approximately six miles from Shamokin, where the road crosses at grade the double tracks of defendant, the place being known as the Yellow Hill Crossing. The railroad tracks run east and west, while the road at this point runs north and south across the tracks. The approach to the crossing from the south (the direction from which the truck was driven) is up-grade for a distance of approximately 450 feet, the gradient being 13.7 feet in each hundred feet. A culm bank on the east side of the road obstructs the view of the railroad tracks to the east, until within a few feet of the crossing. Also three or four hundred feet to the east of the crossing, the tracks curve northwardly behind an embankment, which at places is 22 feet high. This embankment at the time of the accident was covered with a thick growth of brush. In consequence, the view of a train approaching from the east was obscured. The roadway over the crossing was in bad repair at the time, having many holes and ruts.

On either side of the railroad tracks, electrically operated blinker lights are located, the ones for the protection of traffic on the roadway coming from the south are upon a standard about 7½ feet south of the railroad tracks, and according to the evidence, if operating properly, should begin to function the instant a train enters the zone of influence 2,200 feet from the crossing.

Weather conditions on the afternoon in question were clear, when Harris approached the crossing shortly after three o'clock, at a speed of 20 or 25 miles an hour. His rate of speed decreased as the truck ascended the hill, and just before entering upon the tracks he shifted the gears of the machine. Sitting with him in the cab of the truck was a fellow employee, William Waltershied, who testified at trial that, while ascending the hill, he neither saw nor heard the train approaching,

nor observed any warning from the blinker lights. Before attempting to cross the tracks and while still a foot or two south of the first rail, this witness said that the truck was stopped while Harris and he looked up and down the tracks, and listened for the sound of a train. Hearing or seeing none, according to Waltershied, Harris started the truck in low gear across the tracks at a speed of about two miles an hour, because of the holes and ruts in the roadway at the crossing.

The front of the truck had cleared the fourth or last rail of the tracks when a train coming from the east around the curve struck the middle of the right side of the truck and demolished it. Harris was killed instantly, and Waltershied was seriously injured, although not rendered unconscious. After striking the truck, the train continued, with emergency brakes set, beyond the crossing a distance variously estimated from 800 to 1,500 feet. The engineer stated the speed of the train to be 35 miles an hour, but there was evidence he had admitted subsequently that its speed at the time was 60 miles an hour.

Frank Culbert, a witness for plaintiff, who was driving north on the same road and following the truck at a distance of 30 or 40 feet, testified that the Harris truck passed his truck at the bottom of the hill, at which time its speed was 20 or 25 miles an hour. He testified: "I was 30 to 40 feet in back of them and then I noticed they kind of hesitated there, and my looks were right at this bumperette on the rear and I noticed a flicker in their tail light, it just seemed to me they changed and went into low gear." This witness, like Waltershied, stated he did not hear the locomotive sound a whistle or bell or other warning.

Witnesses called by the defendant testified that the customary warning signals were given as the train approached the crossing. Excessive speed of the train was denied. Defendant also called as a witness a certain McIntyre, employed as a signal maintainer, who had in-

spected the blinker signal ten days prior to and the day following the accident, and who said he found it operating perfectly on each occasion.

Upon this appeal defendant insists that the evidence convicts the driver of the truck of contributory negligence as a matter of law.

Viewing the evidence in the light most favorable to the plaintiff, as required upon an appeal from the refusal of defendant's motion for judgment, the following facts are to be considered in connection with the question of contributory negligence. As stated, the view of the tracks to the east, from the point where Harris stopped his truck, was limited to 400 feet at most. This was due to the several factors mentioned, including the culm bank, the sharp curve of the tracks to the north, and the high bank covered with brush which paralleled the north side of the tracks. As the embankment was at least 22 feet above the level of the tracks, and the locomotive was only 14 feet 8¾ inches from the rail to the top of the cab, it appears that at the distance mentioned it was completely hidden from sight. The view to the east was further blocked as the truck continued across the tracks, until, at the northbound or far track, it was limited to 150 feet. At a speed of 60 miles an hour the train would have traversed this distance of 400 feet in slightly less than five seconds. The truck was moving over the crossing at slow speed which did not afford it sufficient time to clear the tracks in safety. In other words, the comparative speeds of the train and truck would permit the train to come around the curve and strike the truck in the manner testified, without being visible in sufficient time to warn the driver. While disputed, the evidence tends to prove that no whistle was blown or bell rung sufficiently to give audible warning of the train's approach. It appears that Harris took all due and proper precautions to stop, look and listen before entering upon the tracks; further, that when the impact occurred his

truck was upon the north or far tracks, and not as he entered upon the first tracks of the crossing.

. Our review of the evidence has convinced us, therefore, that it was proper to submit the question of the decedent's negligence to the jury: *Joyce v. Balt. & O. R. R. Co.*, 230 Pa. 1; *Hugo v. Balt. & O. R. R. Co.*, 238 Pa. 594; *Knepp v. Balt. & O. R. R. Co.*, 262 Pa. 421; *Smith v. Reading Transit & Light Co.*, 282 Pa. 511, and had the trial judge not done so, it would have been reversible error. Moreover, the testimony introduced on behalf of the plaintiff that the driver did stop, look and listen before attempting to cross the tracks, was sufficient to render the question of contributory negligence one of fact for the jury. The court cannot take a case from the jury where there is evidence that the person injured did stop, look and listen at the place where those about to cross usually do so: *Knepp v. Balt. & O. R. R. Co.*, supra. When a person loses his life in a crossing accident there is a presumption that such person at the time of the accident was exercising due care: *Tull v. Balt. & O. R. R. Co.*, 292 Pa. 458; *Morin v. Kreidt*, 310 Pa. 90; *Brown v. Reading Co.*, 310 Pa. 516; *Michener v. Lewis*, 314 Pa. 156. This presumption is greatly strengthened when there is testimony, as there is here, that the decedent fully performed his duty to stop, look and listen before crossing the track: *Razzis v. P. & R. Ry. Co.*, 273 Pa. 550; *Ehrhart v. York Rys. Co.*, 308 Pa. 566. This presumption has not been rebutted by anything disclosed by a review of the record.

The familiar rule of *Carroll v. Pa. R. R. Co.*, 12 W. N. C. 348, that "it is vain for a man to say that he looked and listened, if, in spite of what his eyes and ears must have told him, he walked directly in front of a moving locomotive and was immediately struck," upon which the defendant relies, has no application here. Our decisions have often held that such rule governs clear cases only, where a person who has entered upon a rail-

way track is struck so instantaneously that the presumption he used due care is rebutted as a matter of law: *Howard v. Balt. & O. R. R. Co.*, 219 Pa. 358; *Waltosh v. Pa. R. R. Co.*, 259 Pa. 372; *Mills v. Pa. R. R. Co.*, 284 Pa. 605; *Hawk v. Pa. R. R. Co.*, 307 Pa. 214; *McMillan v. Pa. R. R. Co.*, 311 Pa. 163; and *Ray v. Lehigh Valley R. R. Co.*, 321 Pa. 538.

In *Mills v. Pa. R. R. Co.*, supra, where the facts resemble those of the present case, we refused to apply the rule of the *Carroll* case, supra, and said, (p. 608): "The difficulty with the application of this rule in the present case is that the circumstances of the accident do not necessarily show that the truck was driven directly in front of a train, apparently in plain view. The case is not one where a person is struck immediately upon entering a railroad. On the contrary, the truck had almost cleared the last track and reached a place of safety. In view of the rough roadway of the crossing and the necessarily limited speed of the truck, it is possible that the train, considering its high speed, appeared in sight after deceased and his son had stopped to look and listen and again started to pass over the tracks." To the same effect is *Thomas v. Pa. R. R. Co.*, 275 Pa. 579, which presents a factual situation very close to that of the present case. We decided there that the question of plaintiff's contributory negligence must be submitted to the jury.

We have given due consideration to the rule laid down in *Rhodes v. Pa. R. R. Co.*, 298 Pa. 101, and followed in *Ray v. Lehigh Valley R. R. Co.*, supra; and in *Burkman, Exrx. v. Anderson and Balt. & O. R. R. Co.*, 324 Pa. 206, that it is as much the driver's duty *to listen as to look* for approaching locomotives at crossings. Here, however, the existence of the embankment to the north of the tracks and their sharp curve in the same direction make it impossible for us to hold as a matter of law that decedent must have heard the approaching engine.

As a reason for a new trial, defendant contends that the trial judge erred in that portion of the charge which submitted to the jury, as an element of negligence in the case, the alleged failure of the blinker lights to give warning of the approach of the train. Defendant argues that as plaintiff's evidence showed the driver stopped his truck after he had passed the blinker lights, therefore he did not rely upon them, and the alleged failure of these lights to function was accordingly removed as a possible factor of negligence in the case. With this we cannot agree. Assuming that deceased did stop beyond the lights and made observations independently of them, it does not follow that their failure was removed as a factor contributing to the accident. Had the lights been working, they would have warned deceased of the train's presence, and it may be assumed that he would not then have gone upon the crossing until after the train had passed, even though, from his own observation, a train was not in view when he first looked. He was entitled to rely upon the blinker lights as well as upon his own observations, and the failure of these lights was properly to be considered by the jury as a possible factor of negligence upon the part of defendant. See *Burkman, Exrx., v. Anderson and Balto. & O. R. R. Co.*, supra.

Judgment affirmed.