## Webb et al., Appellants, *v.* Pennsylvania-Reading Seashore Lines.

Argued November 29, 1946. Before MAXEY, C. J., DREW, LINN, STERN, PATTERSON, STEARNE and JONES, JJ.

*Charles A. Rothman,* with him *John Pemberton Jordan,* for appellants.

*Henry R. Heebner,* with him *Wm. Clarke Mason,* for appellee.

OPINION BY MR. JUSTICE DREW, January 6, 1947:

The learned court below having refused to take off a judgment of compulsory nonsuit, plaintiffs took this appeal.

A grade crossing collision occurred between an automobile owned and operated by Edgar M. Webb and a train of Pennsylvania-Reading Seashore Lines. Plain-

tiffs are Webb, Anna L. Babich, a guest passenger in the car, who was a minor when suit was entered and the action was instituted in her behalf by her father and guardian, Peter Babich, who together with Mary Babich, his wife, brought suit in their own behalf. Before trial Anna L. Babich attained her majority and became a party plaintiff and her father, Peter Babich, died and a voluntary nonsuit was entered as to him.

In determining whether the court below was in error in concluding that plaintiffs, Webb and Miss Babich, were contributorily negligent as a matter of law and in refusing to remove the nonsuit, we are bound to consider the evidence in the light most favorable to plaintiffs. So considered the pertinent facts are: On September 20, 1942, at 11:30 o'clock P. M., Webb and Miss Babich were returning from a moving picture show to her home in the outskirts of Camden, New Jersey. Webb drove his car in an easterly direction on Chelten Avenue. Miss Babich sat next to him on the front seat. They proceeded along this four-lane paved street to the place where it is crossed at grade by the tracks of defendant company. It was a dark and windy night. Webb testified that when five or ten feet from the nearest rail, he brought his car to a full stop, and looked and listened for an approaching train, and that when he did not see or hear anything, he put his car in first gear and started over the crossing at a speed of five or ten miles an hour. He said he continued to listen and to look in both directions, and after he had crossed three tracks and was upon the nearest rail of the fourth track, his automobile was struck by an engine or train that he did not see or hear. He further said the distance across the four tracks was forty or fifty feet. He stated positively that there were no lights visible at the crossing, or upon the engine or train which struck him; that there was no safety gate and that no warning whatever was given by bell, whistle or anything of the approach of the train. When struck, Webb was rendered unconscious and had

no recollection of anything that happened after the collision. He was painfully and permanently injured.

In her testimony Miss Babich corroborated all Webb said concerning the fact that he had stopped, looked and listened, and had kept an outlook as he crossed the tracks. She said she had looked and listened, but saw or heard nothing, and she gave positive testimony that she did not see the object which struck the automobile until "a fraction of a second" before the collision. She was also positive in her testimony that there were no lights of any kind at or near the place of the accident or upon the engine or train which struck them, and that no signal was given of the approach of a train to the crossing.

The only testimony in the case was that given by Webb and Miss Babich. At the close of plaintiffs' case the motion of defendant for compulsory nonsuit was granted, the learned court being of opinion that Webb and Miss Babich were contributorily negligent as a matter of law and therefore could not recover. In the opinion of that court it is asserted that these plaintiffs were negligent because they were bound to see the approaching train if they had looked, and also that they could not have helped but hear the approaching train if they had listened. On the facts of this case, we are unable to accept as true either of these conclusions. If the testimony of plaintiffs is true, is it difficult to see what more they could have done. Their uncontradicted testimony that they neither saw nor heard anything, although they stopped, looked and listened before entering upon the first track and continued to do so as they proceeded across all four tracks was sufficient evidence to require submission of the case to a jury: *Hugo v. Baltimore & O. R. R. Co.*, 238 Pa. 594, 86 A. 482; *Harris v. Reading Co.*, 325 Pa. 296, 189 A. 337. The veracity of the witnesses was also for the jury.

Plaintiffs said there were no lights, or signals or warnings of any kind. The darkness alone could have

been sufficient to prevent their seeing a moving train if the train had no lights upon it. With regard to the failure to hear, in *Mussari v. Lehigh Val. R. R. Co.,* 149 Pa. Superior Ct. 85, 25 A. 2d 763, it was argued that it was improbable that a train could run so noiselessly that one exercising his senses would not know of its approach. The court there held that the question was for the jury and affirmed a judgment for plaintiff.

We are all of opinion that on the facts it was necessary to submit the case to the jury and that the learned court erred in refusing to do so.

Judgment reversed and a venire facias de novo awarded.