**Vera G. JOHNSTONE, Administratrix of the Estate of Carroll D. Hague, Deceased, Appellant,**

v.

**The READING COMPANY.**

No. 12153.

United States Court of Appeals Third Circuit.

Argued May 9, 1957.

Decided Sept. 3, 1957.

---

6. Morgan v. Griffith Realty Co., 10 Cir., 192 F.2d 597.

train whistle blowing and bell ringing, and headlight on, coming down its railroad track, that this decedent in spite of the fact the red light was blinking right in his face, drove right out in front of a train. The duty to stop, look and listen has been repeatedly declared by the courts to require a man not to make a perfunctory stop to look and listen, but to look and listen where it will be effective."

B. Nathaniel Richter, Philadelphia, Pa. (Meyer Aaron Bushman, Richter, Lord & Levy, Philadelphia, Pa., on the brief) for appellant.

Richard P. Brown, Jr., Philadelphia, Pa. (Morgan, Lewis & Bockius, Philadelphia, Pa., on the brief), for appellee.

Before MARIS, McLAUGHLIN and KALODNER, Circuit Judges.

McLAUGHLIN, Circuit Judge.

The trial judge directed a verdict in favor of the defendant railroad in this negligence suit which arose out of a grade crossing accident. Plaintiff appeals.

Plaintiff's decedent, Carroll D. Hague, on May 12, 1954, was employed at the Empire Steel Castings plant, Muhlenberg Township, Pennsylvania. Around 3:30 P.M., Daylight Saving Time, having finished his shift, he, in his automobile, proceeded north on Frush Valley Road from the company parking lot. The latter is adjacent to the Frush Valley Road grade crossing of the Reading Company. He drove on to the crossing where his car was struck by the engine of a westbound Reading train. Hague lost his life as a result of the accident. The cause is in the federal court because of the diverse citizenship of the parties. Pennsylvania law therefore governs.

The trial judge held that there was no negligence shown against the railroad and that Hague was contributorily negligent. As to the latter he said:

"Giving him the benefit of all the presumption there may be in his favor, it is obvious that with the

The double railroad tracks at the crossing run east and west. Six hundred feet east there is a curve in the tracks. On the date of the accident some foliage existed in the right side crossing zone. There was a red flasher signal at the crossing which, as far as westbound trains were concerned, was put into operation when such a train reached a point on the tracks 2716 feet east of the crossing. The evidence unmistakably indicates that the flasher was working properly at the time of the accident. The uncontradicted testimony from the engineer is that he started blowing the engine whistle at the whistle board, about 1500 feet from the crossing, and that he was still blowing it at the moment of the impact. The engine bell, according to the engineer, was operated mechanically. He had started it at the Allentown yard (32 miles east of the crossing) and it was ringing as the train approached the crossing. The headlight had been turned on at Bethlehem Station (37 miles east of the crossing) and kept on. It was still lit after the collision.

There is no real dispute regarding the above facts. What appellant seeks to do is excuse Hague's conduct first by the contention that the value of the red blinker was discounted by users of the crossing because a pusher engine worked in the vicinity. But the only affirmative evidence in this connection is by the fireman and flagman who said there was no pusher engine in the area at the time of the accident. John A. Beaver in his motor car passed over the crossing from south to north at 3:25 P.M. He saw the flasher signals working as he came to the

crossing. He stopped; a "pusher type *train*" (emphasis supplied) going west went by and after the blinker stopped flashing he crossed over. Howard Lutz, who was at the crossing a couple of minutes or so following the impact, saw a pusher standing on the eastbound tracks about 200 feet from the Empire plant. He admittedly doesn't know what went on out on that track until he came out. In the light of the record, we must agree with the trial judge that:

" * * * there is no evidence that there was a pusher engine in the block at that time, but even if there were, when this plaintiff's decedent saw the red light, it was his duty not to look and see a pusher, if it had been there, and say 'that is what caused the red light, I can safely go ahead', but it was his duty to look two ways, there were two tracks, and it makes one of two conclusions inescapable, he either didn't look when it was his duty to look, or he did look and carelessly tried to beat the train across, * * * ."

■ As the district judge held, the presence of a pusher on the eastbound track would not have relieved Hague of a duty to exercise care in crossing the other track. It would have been incumbent upon him still to maintain vigilance until he was safely over the tracks once he elected to go forward in the face of the warning signals. Kolich v. Monongahela Ry. Co., 1931, 303 Pa. 463, 154 A. 705; Tull v. Baltimore & Ohio R. R., 1928, 292 Pa. 458, 141 A. 263.

Appellant also asserts that the effect of the bell and whistle to someone on the crossing, alerted by the red flasher, was made a jury question primarily because one witness characterized the Empire plant as "noisy" and another as "very noisy". There is no valid contradiction of the combined effective warning in the testimony.

Appellant argues that the foliage to the east of the crossing prevented observation of an oncoming westbound train. It was plaintiff's own witness, the Chief of Police, who testified that a person in an automobile going north, looking east, could see a train coming around the bend when his automobile wheels were no further north than the south rail of the eastbound track. Pictures of the critical location make it very plain that Hague could have perceived the approaching engine not only when it was an engine length from the crossing at which time the fireman testified Hague came on the eastbound track, but the full 600 feet up to the curve which is that distance east of the crossing.

It is conceded that Hague was bound to stop, look and listen prior to entering on the crossing. Appellant urges that the lack of evidence that he did so is supplied by the presumption the deceased was in the exercise of due care. The difficulty with this is that the presumption has been conclusively overcome by unimpeached evidence that the driver failed to stop his automobile from the point where he could first see east up the tracks prior to entering upon the railroad crossing. The fireman, the only witness who saw the car, stated that as the engine came around the curve there was no car on the tracks or visible to the south of them. When the engine was about 50 or 60 feet east of the crossing (an estimated engine length), pointing to one of the pictures above referred to, he said, "Yes, I seen the hood coming out behind these bushes here." He said it came on the eastbound track where it appeared to have stopped momentarily and then "it leaped right in front of the engine". The fireman described the action of Hague in the automobile when he first saw it as "He was rushing like he was in a hurry when he moved out". The other eyewitness, Joseph K. Cutler, testified that he did not see the automobile before it came on to the track. When he did see it it was on the south side of the crossing and in his lane of traffic. Since he was coming from the north on Frush Valley Road that put the Hague machine on its left side of the road which would have given Hague an even better view to his right. Cutler said that the car did not stop from when he first saw it until the collision.

The testimony of the fireman affirmatively shows that the deceased did not stop in accordance with the law of Pennsylvania from the time he was in a position to effectively observe the Reading tracks to the east of the crossing until the impact. In that situation the presumption that Hague used due care fails. Baker v. Pennsylvania Railroad Co., 1952, 369 Pa. 413, 85 A.2d 416, is cited for the continuance of the presumption in this matter but Baker is fundamentally distinguishable as there was evidence in that trial that the driver of the delivery truck had stopped it five feet from the crossing. Here the only testimony is that Hague at most did not stop his vehicle from the time he could see to the east until he was on the tracks when he seemed to have momentarily paused on the eastbound rails and then "shot out" onto the adjoining, westbound, track. In Baker whether the motorist was contributorily negligent in not continuing his observations after he had stopped prior to entering on the tracks was held to be a jury question; Hague made no stop before proceeding on to the tracks. As was said in the later Jursic v. Pittsburgh and Lake Erie R. Co., 1953, 376 Pa. 142, 150, 102 A.2d 150, 154, regarding the Baker opinion, "The language in question was not intended to mean that in all cases where a traveler has been injured beyond the first track of a crossing, his contributory negligence is for the jury." In Jursic, the plaintiff was found contributorily negligent by the court for not continuing to look while crossing the second track.

Appellant's theory that the presumption of Hague's exercise of due care entitled her to have the issue of contributory negligence submitted to the jury assumes that the presumption is to be accepted as evidence, contradicting actual evidence that Hague was negligent. She relies on Kelly v. Director General of Railroads, 1922, 274 Pa. 470, 118 A. 436 with cases cited therein and Pennsylvania R. R. v. Weiss, 1878, 87 Pa. 447 for her contention. We think the Pennsylvania law with respect to presumptions is set out in the leading case of Watkins v. Prudential Insurance Co. of America, 1934, 315 Pa. 497, 173 A. 644, 95 A.L.R. 869 and the following opinions, among others. Susser v. Wiley, 1944, 350 Pa. 427, 39 A.2d 616; Heath v. Klosterman, 1941, 343 Pa. 501, 23 A.2d 209; District of Columbia's Appeal, 1941, 343 Pa. 65, 21 A.2d 883; Smith v. Kingsley, 1938, 331 Pa. 10, 200 A. 11; Donahue v. Philadelphia Rapid Transit Co., 1928, 293 Pa. 253, 142 A. 291; Tull v. Baltimore & Ohio R. R., supra. These decisions make it clear that in Pennsylvania a presumption is not considered as evidence, but that its function is the placing of the burden of proof. When the party having that burden adduces evidence contrary to the presumption, the presumption has served its purpose and does not remain as evidence. Much of the confusion in the treatment by courts of the result of presumptions arises because the probabilities initially permitting creation of the presumption may still be considered by the jury under proper instructions once the trial issues have been submitted to them. This distinction is ably drawn in Lennig v. N. Y. Life Insurance Co., 3 Cir., 1941, 122 F.2d 871, 873, where the opinion writer is the present Chief Justice of the Pennsylvania Supreme Court.

Under its facts Burkman v. Anderson, 1926, 324 Pa. 206, 188 A. 287, is pertinent here. It does not, as claimed, depend solely upon the motorist not hearing what he should have heard. That element is of importance in this instance as it was in Burkman but there, as appellant insists is the fact before us, the driver went upon the track despite a working red blinker with a train to his left and ignoring the train approaching from his right. Because of that plus the disregard by plaintiff's decedent of the ringing crossing bell, the motorist was found guilty of contributory negligence as a matter of law. The court said in 324 Pa. at page 211, 188 A. at page 288, " * * * the universally recognized danger signals, red lights, were warning

the two men in the automobile to keep off the tracks. If such a warning may be disregarded, then none is sufficient."

We have examined the other opinions presented by appellant for the proposition that the trial judge erred in deciding that Hague was guilty of contributory negligence. None of the cases cited is authority for such contention. We are satisfied that the conclusion of the district court is sound in law and was reached without reliance upon the Pennsylvania incontrovertible physical facts rule which is not decisionally necessary in this case.

With reference to the alleged negligence of the railroad, under the particular circumstances we are inclined to agree with the trial court that it was not a jury question. However, because of the dispositive nature of our conclusion relative to Hague's contributory negligence, there is no need of resolving that phase of the appeal.

The judgment of the district court will be affirmed.